IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-00484-RBJ

TOM WAGNER,
SUSAN BRZEZINSKI,
MATTHEW DeBROSSE,
JOHN GLAZIER,
JAMES HOWE,
KEVIN MOFFITT,
LAURA WALKER,
DANIELLA NOWISKI,
GENE STALSBERG,
KRISTEN GRADO,
GEORGE RAMEY,
NIKOLAS REPETA, and
STEPHANIE PAULEY, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

AIR METHODS CORPORATION, a Colorado corporation,

    Defendant.

ORDER – PENDING MOTIONS (2)

Plaintiffs, flight paramedics and nurses who work or worked for Air Methods Corporation in Michigan, New Mexico, and Illinois, assert claims against their former employer under their respective states' laws for what they allege to be improperly compensated overtime hours. This order addresses plaintiffs' motion for class certification and defendant's motion to dismiss parts of the Second Amended Complaint. The class certification motion is granted. The motion to dismiss is granted in part and denied in part.

## BACKGROUND

Air Methods Corporation ("AMC") provides air ambulance services throughout the United States. Flight paramedics and flight nurses are scheduled to work 24-hour shifts. AMC's policy and practice is to designate eight hours of each 24-hour shift as sleep time, although the employees must remain on base and ready to board a helicopter or plane on five minutes notice if necessary. AMC pays the employees for the sleep time hours. However, if the employee has at least five uninterrupted hours of sleep during the eight hours, then that uninterrupted sleep time is not considered time worked for purposes of calculating the employee's entitlement to overtime compensation.[1]

Plaintiffs are flight paramedics and flight nurses who either are or were employed by AMC in Michigan, New Mexico, and Illinois. They challenge the foregoing overtime policy under the laws of their respective states: Michigan Compiled Laws Annotated § 408.414a (nine plaintiffs); the New Mexico Minimum Wage Act, NMSA 1978, § 50-4-19 *et seq.* (three plaintiffs); and 820 Illinois Compiled Statutes 105/4a (one plaintiff). Alternatively, they assert an equitable claim sounding in unjust enrichment.

Plaintiffs ask the Court to certify either one combined "overtime class" or three separate overtime classes, one for each represented state. ECF No. 51. They also ask the Court to certify either one or three "unjust enrichment" classes. *Id.* AMC opposes class certification. In a separate motion AMC asks the Court to dismiss the claims of two of the Michigan plaintiffs as

---

[1] AMC's policy is essentially uniform on a nationwide policy, but it no longer applies in Kentucky. As discussed later in this order, a similar putative class action was filed there on behalf of flight paramedics and nurses in Kentucky and sixteen other states, including Michigan, New Mexico and Illinois. A class action was ultimately certified and settled on behalf of Kentucky-based employees and former employees only. Statutory changes were thereafter enacted in Kentucky. The nationwide policy also might no longer apply in California where, again as discussed later in this order, AMC recently settled a class action on behalf of California-based flight paramedics and nurses.

2

barred by the statute of limitations, and to dismiss the unjust enrichment claims of all of the plaintiffs.  ECF No. 58.  The motions have been fully briefed, and oral argument was held on October 15, 2020.  ECF No. 84.

## ANALYSIS AND CONCLUSIONS

### A. Motion for Class Certification.

A class may be certified if all four "prerequisites" listed in Rule 23(a) and at least one of the additional factors set forth in Rule 23(b) have been met.

### Prerequisites – Rule 23(a).

1. Numerosity.  The Court must find that the class is so numerous that joinder of all members is impractical.  According to updated numbers provided by the plaintiffs during the oral argument, there are approximately 634 paramedics and nurses in the three states, broken down as follows: Michigan 21; New Mexico 385; and Illinois 228.  The Michigan contingent, nine of whom are named plaintiffs, might be borderline by itself.  *But see, e.g.*, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (upholding class of 18).  However, I do not look at the Michigan group alone.  It is part of a larger group of 634, divided into three classes only because the separate laws of the three states apply to each class.

AMC points out that numerosity is not only a question of numbers.  *Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214 (10th Cir. 2014) (citing *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977)).  It would be impractical and would accomplish nothing of value for the parties or the Court to have up to twenty-one individual Michigan plaintiffs litigating alongside the two large New Mexico and Illinois classes.  I find that the numerosity requirement has been established.

(2) <u>Common Questions</u>.  The Court must find that there are questions of law or fact common to the class.  Rule 23(a)(2) "requires only a single question of law or fact common to the entire class."  *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).  *See Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338, 349-50 (2011) ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'") (citation omitted).  AMC's companywide overtime policy is common to all potential class members.

Similarly, in the recently settled class action by flight paramedics and nurses against AMC in California, *Helmick v. Air Methods Corp.*, No. RG13665373 (Sup. Ct. Alameda Cty., California), the court found that "the policies that underlie Plaintiffs' off-the-clock and overtime claims were the same across the putative class, and [AMC] has presented no affirmative evidence that any of the supervisory personnel at any of the different bases had any discretion in how the rules should be communicated and implemented."  *Id., slip op.* at 6-7 (unnumbered).[2]

(3) <u>Typicality</u>.  The Court must find that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  "[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."  *Stricklin*, 594 F.3d at 1199.  AMC has acknowledged that the plaintiffs' job descriptions are the same in each of the three states.  ECF No. 51-1 at 2.  The named plaintiffs and putative class members are all subject to the same AMC wage and hour policies.  The named plaintiffs would be typical at least of the members who are subject to the same state's laws.

---

[2] The Court assumes that plaintiffs and defendant have knowledge of, and access to, the pleadings in the *Helmick* case, although neither side referred to the case in their briefs or during the oral argument.  Some of the lawyers who represent AMC in the present case also represented AMC in California.  The Court obtained access to the pleadings through the Circuit librarian after reading a media report concerning the settlement.

4

AMC asserts that the claims of the named plaintiffs are not typical because New Mexico and Illinois-based flight paramedics and nurses perform part of their work outside their respective states. Depending on such factors as the location of an employee's base, the location of the patient, the care required, and the location of an appropriate hospital, it could be that a flight to a patient or a hospital would cross a state line. Thus, per AMC's argument, if individual employees spent a substantial portion of their flight time across the border from their base station, they might not have enough hours within their base state to qualify for overtime under the laws of the base state and, therefore, would not be typical of the class. ECF No. 67 at 7-10. AMC cites two Colorado cases in support of this argument. *Brunson v. Colo. Cab Co., LLC*, 433 P.3d 93, 96 (Colo. App. 2018) and *Sanchez v. Q'Max Sols., Inc.*, No. 17-cv-01382-CMA-KLM, 2018 WL 1071133, at *4 (D. Colo. Feb. 27, 2018).

*Brunson* and *Sanchez* were decided under Colorado law, and neither is persuasive on the issue presented here. *Brunson* involved whether shuttle van drivers who transported passengers to and from Denver International Airport but did not drive out of state were nevertheless "interstate" drivers" and thus exempt from the Colorado Minimum Wage Order. Unsurprisingly the Court of Appeals answered the question "no." 433 P.2d at 100-01. *Sanchez* involved whether an employee who performed no work in Colorado could nevertheless sue for overtime under Colorado's wage and hours laws because his employment agreement had a choice-of-law provision indicting that it would be interpreted in accordance with Colorado law. Unsurprisingly, the answer was "no." 2018 WL 1071133 at **3-4.[3]

---

[3] I also note that the provisions of the Colorado Minimum Wage Order are limited to workers performing work in Colorado. *See Brunson,* 433 P.3d at 96 (quoting *Chase v. Farmers Ins. Exch.*, 129 P.3d 1101, 1012 (Colo. App. 2004)); *Sanchez*, 2018 WL 1071133 at *3. Whether such an administrative regulation would exclude work by workers who performed a portion of their work outside the state, and if so, whether the regulation would be enforceable in a state with a statute that is not so limited, are not issues presently before this Court.

5

Plaintiffs reply that AMC withheld New Mexico taxes and paid overtime to New Mexico employees in accordance with New Mexico law, regardless of whether a portion of their work time occurred out of the state (such as across the border into Texas, which has no state income tax). ECF No. 68 at 5. The same is true for Michigan employees and, plaintiffs suspect, Illinois employees, although they had not obtained the Illinois payroll records at the time of the briefing. *Id.* at 5-6. They cite *Bostain v. Food Express, Inc.*, 153 P.3d 846, 848 (Wa. 2007).

*Bostain*, though decided under Washington state law, is a more apt authority. The question was whether Washington's Minimum Wage Act, which required employers to pay their employees overtime on work in excess of 40 hours per week, applied to all hours worked by an interstate truck driver based in Vancouver, Washington even though he did not work more than 40 hours a week within the state of Washington. Approximately 37% of his driving time was in Washington, and 63% was out of state. The court held that under the plain language of the statute, which did not limit its overtime requirement to hours worked within Washington, all hours worked must be counted in determining the driver's entitlement to overtime. *Id.* at 848-51.

In a business such as an air ambulance business, where cross-border flights might be inevitable, it makes sense for the law of the employee's base to apply, just as the tax laws of the employee's base are apparently applied by AMC to its employees. Otherwise, the remedial purpose of the overtime laws – to protect the rights of employees – would be frustrated. Air ambulance employees based in geographic areas where their flights frequently cross state borders and whose hours in either or both states alone would not exceed 40 in a week would lose the protections that air ambulance employees who rarely or never cross state lines have, even though their work weeks would be the same. AMC's argument, seemingly created in the effort to avoid class certification, is not persuasive. If a state's overtime statute requires that overtime be paid if

the employee works more than 40 hours in a week and does not expressly limit its application to hours worked within the state's boundaries, then this Court will apply the statute to all hours worked.  The Court finds that the typicality requirement has been met.

(4) Representative.  The Court must find that the representative parties will fairly and adequately protect the interests of the class.  This means, "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).  There are no apparent conflicts between the named plaintiffs and the absent members of the putative class.  The Court finds that the identified lawyers in the Arnold & Miller and Moody & Stanford law firms are experienced in labor and employment matters and in class action litigation.  *See* Arnold, Cowan and Moody Declarations, ECF Nos. 51-13, 51-14 and 51-15.  They have actively prosecuted the case to date, and there is no reason to suspect that they will not continue to do so.

### Types of Class Actions – Rule 23(b)

At least one of the alternatives set forth in Rule 23(b) must be met.  Here, plaintiffs argue that they qualify under Rule 23(b)(3) which requires that the Court find

> that questions of fact or law common to the class members *predominate* over any questions affecting only individual members, and
>
> that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.
>
> The matters pertinent to these findings include:
>
> (A) the class members interest in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

>     (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b) (emphasis added).

Predominance.  "[T]he predominance prong asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).  The common issue that applies to all plaintiffs in each class – whether AMC's common overtime policy is lawful under the respective state's wage and hours laws – is a significant, unifying issue that lends itself to determination on a class-wide basis as to each of the three putative classes.

AMC notes that if plaintiffs prevail on the merits, the amount of overtime compensation will have to be calculated for each individual class member.  True.  However,

> [t]he presence of individualized damages issues does not defeat the predominance of questions common to the class.  "[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."  *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d at 1220 (quoting *McLaughlin* 522 F.3d at 231 (2d Cir. 2008); *see also* Newberg § 4.54 & n.2 (stating that "courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damages determinations" and listing cases).

*Menocal v. GEO Group, Inc.*, 882 F.3d 905, 926-27 (10th Cir. 2018).

Superiority.  The superiority prong is met if class treatment "will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *CGC Holding Co.*, 773 F.3d at 1096 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).  Since all the putative class members were impacted by the same AMC policy and all will be bound by the Court's application of their respective state's wage and hours laws to the AMC policy, it is evident that class treatment will achieve economies of scale and promote

8

uniformity of decisions as to one another in their respective states.  During the oral argument plaintiffs' counsel pointed out that the smaller individual claims might be in the order of $1,000-$2,000 – a fact suggesting that individual prosecution of the claims would be impractical.

Perhaps the best evidence of superiority, however, lies in the results of the Kentucky and California cases.  In both instances the class actions resulted in settlements that both the plaintiffs and AMC approved.  Indeed, AMC's Director of Communications Doug Flanders issued this statement about the $78,850,000 settlement in California:

> This decision to change AMC's pay practices puts our teammates first.  We know this will make us stronger in California by ensuring that we continue to recruit and retain the top medical clinicians in the state, strengthens our push to be the destination employer for all in the air medical industry and allows us to continue to provide the highest level of care to all the California communities we serve.

Angela Ruggiero, *Air medical company agrees to $78 million settlement for overtime*, The Mercury News (July 2, 2020), https://www.mercurynews.com/2020/07/02/air-medical-company-agrees-to-78-million-settlement-for-overtime/.

That is a significant endorsement of the perceived benefit of class treatment of the California employees' claim.

This is not to say that AMC does not have defenses on the merits under the laws of Michigan, New Mexico, or Illinois.[4]  A merits decision in favor of the defendant on a class-wide basis would also create efficiencies and promote uniformity of decision.  It works both ways.

---

[4] For example, during oral argument defense counsel mentioned "guidance" in New Mexico regarding sleep time hours.  I believe counsel was referring to a New Mexico guidance document, *The Investigations Manual - Labor Relations Division* (Nov. 12, 2019), which, in a section called "Sleep Time," has the verbatim text of the FLSA regulation on shifts over 24 hours.  *Id.* at 51–52.  The FLSA regulations state that when an employee is on duty for 24 hours or more, "the employer and the employee may agree to exclude . . . a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked."  If the sleeping period is interrupted by a "call to duty," the entire period counts as hours worked.  However, if the employee can get at least five hours of uninterrupted sleep then those hours count as sleep time and will not be compensable hours worked.  29 C.F.R. § 785.22.  The Court expresses no opinion as to whether the guidance document or regulation precludes the New Mexico plaintiffs' claim.  New Mexico statutory law provides that "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours."  NMSA § 50-4-22(D).

Having found that the four prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3) have been met, the Court grants the motion for class certification. The Court will certify three overtime classes as follows: "All persons employed by AMC as flight paramedics or flight nurses in [Michigan] [New Mexico] [Illinois] from February 19, 2016 to the present." The Court appoints Arnold and Miller (Charles W. Arnold and J. Robert Cowan) and Moody & Stanford (Christopher Moody) as class counsel.

AMC is directed promptly to provide a class list with contact information for the approximately 634 total members of the three classes to the maximum extent that information is available to it through payroll records or other means (last known address, email address, telephone numbers, and any other information it might have concerning the present whereabouts and communication avenues for these former and current employees). Absent a compelling showing that more time is reasonably needed, the contact information must be provided to plaintiff's counsel no later than January 15, 2021. Plaintiffs will then notify class members using the form of notice provided at ECF No. 51-16, to which AMC has registered no objection.

**B.  Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint.**

Despite its sweeping title, this motion seeks (1) to dismiss plaintiffs Brzezinski and Howe's class claims as barred by the applicable Michigan statute of limitations, and (2) to dismiss plaintiffs' unjust enrichment claim. For the following reasons the motion is granted as to the unjust enrichment claim but denied as to Ms. Brzezinski and Mr. Howe.

1. Claims of Susan Brzezinski and James Howe.

Plaintiffs allege that Ms. Brzezinski was employed by AMC in Michigan from approximately 2005 to 2015. Mr. Howe was employed by AMC in Michigan from approximately 2006 until 2014. The parties do not dispute that pursuant to Michigan's wage act,

a civil action must be filed within three years of the alleged violation.  Mich. Comp. Laws § 408.419(1).  This lawsuit was filed on February 19, 2019, more than three years after the end of Ms. Brzezinski and Mr. Howe's employment.

Plaintiffs argue that the running of the Michigan statute of limitations was tolled by another class action lawsuit against AMC in which Ms. Brzezinski and Mr. Howe were members of the putative class, and that the tolling allows their claims to be timely.  On March 22, 2017 eight former Kentucky-based AMC employees filed a class action complaint against AMC in a Kentucky state court.  *Day v. Air Methods Corporation*, No. 17-CI-01071 (Fayette, Kentucky Circuit Court, 22nd Judicial District) (the Complaint is filed as ECF No. 58-1 at 13 in the present case).  The complaint was filed on behalf of flight paramedics and nurses who allegedly had been denied overtime compensation in violation of the laws of Kentucky and sixteen other states, including Michigan.  Ms. Brzezinski and Mr. Howe were members of the putative class.

AMC removed the case to federal court.  *Day v. Air Methods Corp.*, No. 5:17-cv-00183-DCR (E.D. Ky.) (Notice of Removal) (ECF No. 58-1 in the present case).  On September 28, 2018 six Michigan-based former AMC employees, including Ms. Brzezinski and Mr. Howe (and four others who also are plaintiffs in the present case) moved to intervene as named plaintiffs and class representatives in the *Day* case.  *See* ECF No 58-2 at 26 (Motion for Second Permissive Intervention).[5]  However, on November 19, 2018 a magistrate judge recommended that the would-be intervenors not be permitted to intervene.  ECF No. 58-3.[6]  They did not object.  I do

---

[5] Plaintiffs state that the purpose of the attempted intervention was to (1) assert their own individual and representative claims; (2) address standing issues because there was no named plaintiff who was aggrieved by Michigan's overtime laws; and (3) "carry the Rule 23 class torch for the putative class members in Michigan.  ECF No. 63 at 2.

[6] The magistrate judge believed that a Kentucky court lacked personal jurisdiction to hear the claims of Michigan (and New Mexico) employees against a non-resident defendant arising from conduct that occurred in Michigan (and New Mexico).  The difference between those facts and ours is that AMC is based in this state.

not know when or even whether the district court accepted the recommendation. More importantly, the parties have not indicted that the district court formally denied certification of the putative class in which Ms. Brzezinski and Mr. Howe were members. They do report that in or about January 2019 the district court certified a class limited to Kentucky employees, apparently simultaneously with the approval of a settlement of the *Day* case. *See* ECF No. 58-4 (Class Action Settlement Agreement and Release). Ms. Brzezinski and Mr. Howe, and the other would-be intervenors, filed the present case approximately three months after the magistrate judge's recommendation that their motion to intervene in the *Day* case be denied.

Plaintiffs appear to be arguing that if the Michigan statute of limitations was tolled from the filing of the *Day* case until the magistrate judge's recommendation was issued, then Ms. Brzezinski and Howe's complaint in the present case would not be time-barred. Frankly, I do not understand how the motion to intervene or the magistrate judge's recommendation are the critical facts. In Michigan, as a matter of statute, when a putative class action lawsuit is filed,

> (1) *The statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action.*
>
> (2) *The statute of limitations resumes running against class members other than representative parties and intervenors:*
>   (a) on the filing of a notice of the plaintiff's failure to move for class certification under subrule (B)(2);
>   (b) 28 days after notice has been made under subrule (C)(1) of the entry, amendment, or revocation of an order of certification eliminating the person from the class;
>   (c) on entry of an order denying certification of the action as a class action;
>   (d) on submission of an election to be excluded;
>   *(e) on final disposition of the action.*
>
> (3) If the circumstance that brought about the resumption of the running of the statute is superseded by a further order of the trial court, by reversal on appeal, or otherwise, the statute of limitations shall be deemed to have been tolled continuously from the commencement of the action.

12

M.C.R. § 3.501(F) (emphasis added).  Under this statute, the period of limitations in Michigan was tolled as to absent class members, including Ms. Brzezinski and Mr. Howe, from the date the *Day* case was filed until one of the events in subsection (2) occurred.  There is nothing in the record that would trigger subsections (a), (b) (c) or (d).  The magistrate judge's recommendation was just that – a recommendation to the district court – and, in any event, it did not directly address whether a motion to certify a class action had been or should be denied.  Therefore, I am left to assume that Ms. Brzezinski and Mr. Howe's membership in the putative class probably ended upon the district court's certification of a Kentucky class in conjunction with the settlement.  That would easily make their participation in the present case timely. [7]

The Michigan statute was modeled on *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553-55 (1974) in which the Court held that the filing of a putative class action tolls the period of limitations as to class members who timely intervene or file a separate action after class certification is denied.  *See Cowles v. BankWest*, 719 N.W. 2d 94, 103 (Mich. 2006).  AMC points out that in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), the Court clarified that *American Pipe* tolling does not grant class members additional time to file a new class action:

> *American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails.  But *American Pipe* does not permit the

---

[7] Neither party has provided the Court with the exact dates of the termination of Ms. Brzezinski's or Mr. Howe's employment.  Plaintiffs allege that Ms. Brzezinski was employed from "approximately 2005 to 2015." ECF No. 56 at 2, ¶3.  However, in her Declaration in Support of Class Certification she states that she was employed by AMC as a flight nurse from "approximately July 2005 to approximately March 2011."  ECF No. 58-3 at 1, ¶2.  If the latter were correct, then her claim would be barred under any theory.  If the former were correct, her claim would be timely even if, contrary to my conclusion, the magistrate judge's recommendation on the motion to intervene issued November 19, 2018 were deemed to be the event that ended tolling under the statute.  Plaintiffs allege that Mr. Howe was employed from "approximately 2006 until 2014."  ECF No. 56 at 2, ¶6.  His Declaration states that he was employed "from approximately 6/2006 until approximately 6/2014."  ECF No. 51-6 at 1, ¶2.  If the magistrate judge's recommendation on the motion to intervene were deemed to be the event that ended tolling under the statute, then whether his complaint in this case was timely would be a close question, possibly depending on the exact day of his termination.  But even if one or both of these plaintiffs were eliminated, there are several other Michigan plaintiffs who can represent the Michigan class.

13

>  maintenance of a follow-on class action past expiration of the statute of limitations.

*Id.* at 1804. Therefore, defendant argues, Ms. Brzezinski and Mr. Howe should not be permitted to take advantage of *American Pipe* tolling in this case where they purport to be class representatives. However, *American Pipe* tolling is not the issue here. Rather, as both parties recognize, this Court is bound to follow Michigan law on the statute of limitations. ECF No. 63 at 4. *See Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005). Although the Michigan statute might have been modeled after *American Pipe*, and although *China AgriTech* has clarified the reach of *American Pipe*, this Court must follow the plain language of the statute as it is. Based on the facts alleged in the Second Amended Complaint and the plain language of the statute, Ms. Brzezinski and Mr. Howe's claims in this case are timely.

    2.  <u>Plaintiffs' Unjust Enrichment Claims</u>.

Defendants argue that plaintiffs' unjust enrichment claims are duplicative of their statutory claims, and therefore, they should be dismissed. I agree.

Courts in all three states have held that equitable claims will not lie where there is a remedy at law. *See Pacheco v. Boar's Head Provisions Co.*, No 09-cv-298, 2010 WL 1323785, at *4 (W. D. Mich. Mar. 30, 2010) ("Although Michigan cases do not explicitly list the 'nonexistence of any other remedy at law' as an element of an unjust enrichment claim, Michigan cases have consistently held that '[e]quity will not take jurisdiction where there is a full, complete, and adequate remedy at law, unless it is shown that there is some feature of the case peculiarly within its jurisdiction."); *Sims v. Sims*, 930 P.2d 153, 159 (N.M. 1996) ("equity will not act if there is a complete and adequate remedy at law"); *Nesby v. Country Mut. Ins. Co.*,

14

805 N.E.2d 241, 243 (Ill. App. Ct. 2004) ("unjust enrichment is only available when there is no adequate remedy at law").

Plaintiffs have a complete and adequate remedy in the wage and hours statutes of Michigan, New Mexico, and Illinois.  That is not to say that they will necessarily prevail in their claims under those statutes.  Rather, it is to say that the respective states have addressed the issues in statutes that, possibly together with administrative regulations, will determine plaintiffs' overtime rights.

Plaintiffs agree that "law generally trumps equity at the end of the day."  ECF No. 63 at 8.  However, they argue that they are entitled to plead their claims in the alternative and to decide later which theory they wish to pursue.  Plaintiffs cite cases from this district and the Tenth Circuit.  If I assume, as plaintiffs implicitly do, that the issue is procedural (can a plaintiff plead alternative theories and elect later?), then those cases would apply.

Plaintiffs rely most heavily on two Judge Kane decisions in *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) and 320 F.R.D. 258 (D. Colo. 2017).  Immigration detainees in the Aurora Contract Detention Facility were required to clean their housing units' common areas, and they also performed various other jobs such as doing laundry and preparing meals through a voluntary program that paid $1 per day.  They filed a putative class action in which they alleged that the facility violated the Colorado Minimum Wage Order (CMWO), which establishes Colorado's minimum wage, and the Trafficking Victims Protection Act (TVPA), which prohibits forced labor.  They also asserted an unjust enrichment claim.  The court granted a motion to dismiss the CMWO claim because the detainees were not "employees."  113 F. Supp. 3d at 1129.  However, it did not dismiss the TVPA or the unjust enrichment claims, and it later certified two classes: (1) all detainees housed at the Aurora Facility in the past ten years

15

(the "TVPA class"); and (2) all detainees who participated in the Aurora Facility's voluntary work program in the past three years (the "unjust enrichment class"). The Tenth Circuit affirmed. *Menocal*, 882 F.3d 905.

I conclude that *Menocal* is not dispositive of the issue presented here. Pleading in the alternative was not an issue in that case. Rather, there were two differently-defined classes of plaintiffs, one of which pursued the TVPA claim, and the other that pursued the unjust enrichment claim. However, in *Francis v. Mead Johnson & Co.*, No. 1:10-cv-00701, 2010 WL 5313540 (D. Colo. Dec. 17, 2010), Judge Kane dismissed an unjust enrichment claim because plaintiffs sought recovery for the same wrongful conduct and the exact same damages in the unjust enrichment claim as they sought in their claim under the Colorado Consumer Protection Act. *Id.* at *9. The court added, "because the success of Plaintiff's unjust enrichment claim depends directly upon the success of her CCPA claims, alternative pleading is superfluous." *Id.* Here, plaintiffs are seeking the same remedy based on the same conduct under both their statutory and their unjust enrichment theories. Thus, as Judge Kane put it in *Francis*, the unjust enrichment claim is superfluous.

If I instead were to assume that the issue presented is substantive (can an equitable theory provide a remedy that a state statute precludes?), then I would look to the laws of the three states for an answer. Neither party provides state law on point. However, in *Pacheco v. Boar's Head Provisions Co., Inc.*, the plaintiffs sought the same remedy under both the FLSA and their unjust enrichment claim, and they had not suggested that they lacked an adequate remedy under the FLSA or that there was some feature of their case that was peculiarly within the province of a court of equity. 2010 WL 1323785 at 5. After citing cases holding that under Michigan law the existence of a legal remedy bars an equitable claim, the court dismissed the unjust enrichment

16

claim. "Plaintiffs merely assert their right to bring alternative theories of recovery. This is not a sufficient basis for bringing an independent action for equitable relief." *Id.*

In New Mexico it is not as clear. In general, "New Mexico courts do not distinguish between actions brought at law or suits brought in equity." *Sims*, 930 P.2d at 129. "Thus, as a general proposition, 'Where a statute gives a right of action without prescribing the form, the right of action may be enforced by any appropriate remedy, legal or equitable.'" *Id.* (citation omitted). Nevertheless, "equity will not act if there is a complete and adequate remedy at law." *Id.* (citation omitted). I assume that the New Mexico statute governing overtime obligations does provide a complete and adequate remedy, even if it were to turn out that under the statute plaintiffs are not entitled to the overtime they seek, such that equity would not supply a remedy that the statute denies.

The Illinois case cited by the defendant, *Nesby*, presents the more typical facts where the court dismissed an unjust enrichment claim where the parties had an express contract. "Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." 805 N.E. 2d at 243. The case is not on point. However, by analogy, where a statute governs the parties' rights and obligations, an equitable doctrine should have no application.

Finally, I note that during the oral argument, plaintiffs' counsel indicated that, if forced to make an election, he would elect the statutory overtime claim. That is consistent with the law discussed above.

**ORDER**

1. Defendant's motion to certify class, ECF No. 51, is GRANTED. Notice shall be provided to members of the three classes as directed in this order.

2. Defendant's motion to (partially) dismiss plaintiffs' Second Amended Complaint, ECF No. 58, is GRANTED IN PART AND DENIED IN PART. It is denied as to plaintiffs Brzezinski and Howe but granted as to plaintiffs' alternative claim for unjust enrichment.

DATED this 29th day of December, 2020.

BY THE COURT:

*[signature]*

_____

R. Brooke Jackson
United States District Judge