IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-00484-RBJ

TOM WAGNER,
MATTHEW DeBROSSE,
JOHN GLAZIER,
JAMES HOWE,
KEVIN MOFFITT,
LAURA WALKER,
SUSAN BRZEZINSKI,
DANIELLE NOWISKI,
GENE STALSBERG,
KRISTEN GRADO,
GEORGE RAMEY,
NIKOLAS REPETA, and
STEPHANIE PAULEY, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

AIR METHODS CORPORATION, a Colorado corporation,

      Defendant.

---

ORDER ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

---

      Plaintiffs, a group of flight paramedics and nurses who worked for Air Methods

Corporation ("AMC") in Michigan, New Mexico, and Illinois, assert claims against their former

employer under their respective states' laws for overtime hours that they say were compensated

improperly.  Before the Court are plaintiffs' partial motion for summary judgment [ECF No. 91]

and defendant's motion for summary judgment [ECF No. 93].  For the reasons discussed below,

1

both motions are granted in part and denied in part.

# I. FACTUAL BACKGROUND

The only issue on summary judgment is whether the FLSA "sleep time" rule found at 29 C.F.R. 785.22 applies in Illinois, New Mexico, and Michigan. Under that rule, time provided to employees for sleeping during twenty-four-hour shifts is excluded from an employee's hours worked, for overtime purposes, if the employee can get at least five hours of uninterrupted rest. If the sleep time rule does not apply in a given state, plaintiffs from that state are owed additional compensation for overtime in yet-to-be-determined amounts. Therefore, apart from calculation of overtime hours worked and damages owed (if any), the facts in this case are undisputed. *See* ECF Nos. 91, 93, 98, 99, 100, and 101.

AMC provides emergency air medical services from bases out of Illinois, New Mexico, and Michigan.[1] ECF Nos. 56 at ¶17; 67-1 at 6. AMC's bases in these three states operate twenty-four hours per day all year. ECF No. 67-1 at 6. The bases are equipped with at least one air ambulance and staffed by one pilot and two clinicians (generally, one flight nurse and one flight paramedic). *Id.* AMC employed plaintiffs as flight nurses or paramedics across the three states at issue here. Plaintiff Pauley worked in Illinois. ECF Nos. 56 at ¶15; 57 at ¶15. Plaintiffs Grado, Ramey, and Repeta worked in New Mexico. ECF Nos. 56 at ¶¶12–14; 57 at ¶¶12–14. Plaintiffs Stalsberg, Wagner, Brzezinski, DeBrosse, Glazier, Howe, Moffit, Walker, and Nowiski worked in Michigan. ECF Nos. 56 at ¶¶2–10; 57 at ¶¶2–10.

All plaintiffs and putative class members are non-exempt employees under the FLSA. AMC's Employee Handbook states that "[e]mployees classified as nonexempt are eligible for

---

[1] AMC also operates out of other states, but only Illinois, New Mexico, and Michigan are relevant to this case.

overtime pay as provided by applicable state law." ECF No. 91-19 at 2; *see also* ECF No. 91-20 at 2. The Employee Handbook also states, "[e]mployees are expected to report and remain at their assigned duty station for the entire shift, regardless of the operational status of the base (e.g., inclement weather, maintenance, out of service) and may not leave their assigned duty station during a working shift without a supervisor's permission." ECF No. 91-19 at 2. AMC's policy also states that "[t]ime worked is all the time actually spent on the job performing assigned duties, which includes learning time, supervisor time, administrative time, etc." ECF No. 91-21 at 2.

The flight paramedics and nurses staffed at AMC's bases are ready to respond to emergency calls at any time. ECF No. 67-1 at 6. They generally work two twenty-four-hour shifts each week. ECF No. 93-1 at ¶3. Flight paramedics and nurses enter into 24-Hour Shift of Duty Agreements ("24-hour agreements") with AMC at or around the time they begin their employment. *Id.* at ¶4; ECF No. 93-3. These agreements set out AMC's "sleep time" policy. Each 24-hour agreement includes the following provisions:

1. **24-hour shift.** When an Employee is scheduled and works a 24-hour shift, Employee shall be paid their regular straight time rate of compensation for 24-hours. A sleep period of eight hours shall be regularly scheduled. AMC shall provide adequate dormitory facilities.

2. **Scheduled Sleep Periods.** The sleep period referred to in paragraph 1, above, shall be excluded from "daily time worked" and shall not be counted as hours worked. Nevertheless, AMC agrees that sleep periods shall be paid at the employee's regular rate of pay.

3. **Sleep Interruption due to Emergency Call Outs.** The period of interruption to the sleeping period shall be included in "daily time worked" and shall be counted as hours worked. If an employee cannot get at least five hours of uninterrupted sleep time (which need not be consecutive) the entire sleeping period shall be included in "daily time worked" and counted as hours worked.

4. **Payment of Weekly Overtime.**  All time worked in excess of 40 hours in a single work-week will be paid at one and one-half times Employee's regular rate of pay.

ECF No. 93-3.  AMC Senior Vice President Heather Dumas confirmed that "AMC pays straight time for the eight-hour sleep period, which employees log separately.  If the clinician gets at least five (5) uninterrupted hours of sleep, AMC does not count such sleep period towards the overtime calculation."  ECF No. 91-3 at ¶3.

AMC's sleep time policy means that employees are normally paid for their eight-hour sleeping shifts at their regular or base rate of pay, even if those hours would normally constitute overtime, i.e. those hours were in excess of the first forty hours an employee worked in a week.  However, if an employee spends any part of that eight hours actually working, that specific time worked counts as "hours worked" and is thus compensated at the overtime rate if the employee has already worked forty hours that week.  If an employee spends more than three of those eight hours working, i.e. if he or she gets less than five uninterrupted hours of sleep, the entire eight hours counts as "hours worked" and is thus compensated at the overtime rate.  Practically speaking then, the AMC sleep time policy fails to compensate employees for sleep time actually used as sleep time at overtime rates, even though those hours often (in fact, typically) are worked in addition to an employee's first forty hours in the workweek.

AMC's sleep time policy applies nationwide (except for Kentucky), and AMC applied it the same way across Illinois, New Mexico, and Michigan.  The policy has been in effect for the entire class period, i.e. at least from February 19, 2016 to the time these motions for summary judgment were filed.  ECF Nos. 91-6 at 2; 91-7 at 2.  The eight-hour sleep periods for flight paramedics and nurses are typically scheduled from ten o'clock P.M. to six o'clock A.M. during each twenty-four-hour shift.  ECF Nos. 93-1 at ¶5; 93-5 at 40:11-15.  AMC maintains designated

sleeping facilities with beds at its bases for its paramedics and flight nurses. ECF Nos. 93-1 at ¶7; 93-4 at 60:14–61:3. Those employees can sleep, watch television, surf the internet, eat, make phone calls, or engage in other personal matters during the sleep period. ECF Nos. 93-1 at ¶9; 93-4 at 62:3-20.

All of the plaintiffs in this lawsuit were subjected to AMC's sleep time policy. ECF Nos. 91-8 at ¶4; 91-9 at ¶4; 91-10 at ¶4; 91-11 at ¶4; 91-12 at ¶4; 91-13 at ¶4; 91-14 at ¶4; 91-15 at ¶4; 91-16 at ¶4; 91-17 at ¶4; 91-18 at ¶4. Each plaintiff signed a 24-hour agreement with AMC reflecting their consent to the policy. ECF No. 93-3. AMC provided adequate sleeping facilities to all plaintiffs and putative class members. ECF Nos. 56; 93-1 at ¶8; 93-4 at 60:18–62:20; 101 at 3. Plaintiffs and putative class members usually enjoyed an uninterrupted night's sleep during their sleep period. ECF No. 56. If a plaintiff could not get at least five hours of uninterrupted sleep time, he or she would record the interruption. ECF Nos. 93 at ¶13; 93-5 at 41:9-21; 101 at 3. If a plaintiff recorded that he or she did not get at least five hours of uninterrupted sleep during a sleep period, AMC counted the entire eight-hour sleep period as hours worked. ECF Nos. 93-1 at ¶10; 101 at 3. However, all of the plaintiffs also worked shifts during which they received at least five hours of uninterrupted sleep time, and that time was not considered "hours worked" per AMC's policy. This is the case even though plaintiffs were not permitted to leave AMC's premises during the sleep period. ECF Nos. 91-8 at ¶5; 91-9 at ¶5; 91-10 at ¶5; 91-11 at ¶5; 91-12 at ¶5; 91-13 at ¶5; 91-14 at ¶5; 91-15 at ¶5; 91-16 at ¶5; 91-17 at ¶5; 91-18 at ¶5.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed this class action lawsuit on February 19, 2019. ECF No. 1. They alleged violation of state wage and hour laws in Illinois, New Mexico, and Michigan, as well as unjust

enrichment.  *Id.*  In October 2020 the Court heard argument on plaintiffs' motion to certify a

class and defendant's motion to dismiss, which included discussion on the main issue in this

case—whether Illinois, New Mexico, and Michigan have a "sleep time" exception to overtime

that precludes plaintiffs from recovering in those states.  ECF No. 84.  The Court granted the

motion for class certification.  ECF No. 92.  It also granted in part and denied in part defendant's

motion to dismiss, ultimately dismissing only the unjust enrichment claim.  *Id.*  Plaintiffs filed

their partial motion for summary judgment on December 28, 2020.  ECF No. 91.  Defendant

filed its motion for summary judgment on December 30, 2020.  ECF No. 93.  Both motions

became ripe on January 29, 2021.  ECF Nos. 100 and 101.

### III. STANDARD OF REVIEW

A court may grant summary judgment if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The

nonmoving party must "designate specific facts showing that there is a genuine issue for trial."

*Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition

of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248.  The court will examine the factual record and make reasonable

inferences in the light most favorable to the party opposing summary judgment.  *See Concrete*

*Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

Where, as here, the parties file cross-motions for summary judgment, each motion is considered separately and "the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). The court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Fed. Ins. Co.*, 213 F. Supp. 3d 1333, 1339 (D. Colo. 2016), *aff'd*, 734 F. App'x 586 (10th Cir. 2018) (unpublished). "[T]he reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non-prevailing party." *Id.* (citing *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004)).

## IV. ANALYSIS

Plaintiffs in this case allege that they were insufficiently compensated for certain sleep time hours they worked. As discussed above, plaintiffs are groups of current or former AMC employees who bring their claims under Illinois, New Mexico, and Michigan laws. They do *not* bring claims under the Federal Labor Standards Act ("FLSA"). However, the primary question on summary judgment is whether the FLSA's sleep time rule nonetheless applies in each of these states. *See* 29 C.F.R. § 785.22. If the sleep time rule applies in a given state, summary judgment for defendant is appropriate on the overtime claims for that state's plaintiffs. If it does not apply, partial summary judgment is appropriate as to the claims of that state's plaintiffs.

Because this case concerns application of an FLSA rule, some background on the FLSA is important. The FLSA's default overtime rule requires that employers pay their workers at least one and one-half their regular rate of pay for any hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1). There are exceptions to this default rule. Many of them depend on what

is and is not included in "hours worked" by an employee.

The text of the FLSA statute does not fully define "hours worked." It merely excludes from hours worked "any time spent in changing clothes or washing at the beginning or end of each workday" based on express terms, customs or practices under a collective bargaining agreement. *Id.* § 203(o); *see also* 29 C.F.R. § 785.6 (noting "partial definition" under 29 U.S.C. § 203(o)). However, the FLSA has various regulations that interpret and define what does and does not count as hours worked. For example, 29 C.F.R. § 778.223(a) says that

> Under the Act an employee must be compensated for all hours worked. As a general rule the term "hours worked" will include:
> (1) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and
> (2) All time during which an employee is suffered or permitted to work whether or not he is required to do so.

The regulation goes on to say, "[s]ome of the hours spent by employees, under certain circumstances, in such activities as waiting for work, remaining 'on call', traveling on the employer's business or to and from workplaces, and in meal periods and rest periods are regarded as working time and some are not." *Id.* § 778.223(b). The governing principles for these situations are laid out in 29 C.F.R. § 785 (interpretative bulletin on "hours worked") and 29 C.F.R. § 790 (1947 Portal-to-Portal Act's statement of effect).

One of those governing principles is, of course, the sleep time rule at issue here. It reads:

> (a) General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

> (b) Interruptions of sleep. If the sleeping period is interrupted by a call to duty, the

interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours sleep during the scheduled period the entire time is working time.

29 C.F.R. § 785.22 (citations omitted). Reading § 788.223 and § 785.22 together, the latter is an

exception to the former. If the sleep time rule in § 785.22 did not exist, all hours an employee

spent on an employer's premises designated as "sleep time" would be compensable as "hours

worked." The sleep time rule thus carves bona fide sleeping time out from compensated hours,

provided that the employer and employee agree to this arrangement, and that the employer

furnishes adequate sleeping facilities to the employee.

The FLSA applies to employers who have more than two employees, are involved in

interstate commerce, and have an annual gross revenue of over $500,000. 29 U.S.C. § 203(b),

(d), (i), (j), & (s). That the FLSA applies to an employer does not mean necessarily that state

laws do *not* apply, however. In fact, Congress specifically provided for the possibility that

individual states would provide more or stronger protections for workers than the FLSA. 29

U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse

noncompliance with any Federal or State law or municipal ordinance establishing a minimum

wage higher than the minimum wage established under this chapter or a maximum work week

lower than the maximum workweek established under this chapter . . . ."). As a result,

employers can be subject to both the FLSA and state minimum wage statutes.

Such is the case here. Though the parties do not address whether AMC falls under the

FLSA, it undoubtedly does—it operates in nearly all fifty states, and its flight crews often fly

between states. *See* AIR METHODS, https://www.airmethods.com; ECF No. 67 at 2–3. But

plaintiffs bring claims only under their respective state statutes.

AMC's sleep time policy mirrors the FLSA provision in 29 C.F.R. § 785.22. The employer bears the burden of proving that an exemption or exception to an FLSA protection applies. *See, e.g.*, *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir. 2008); *Fowler v. Incor*, 279 F. App'x 590, 598 (10th Cir. 2008) (unpublished) (citations omitted) ("An employer seeking to avoid application of the FLSA's general rule that work is compensable bears the burden of proving an exception."). Thus, for the sleep time rule to apply in this case as a defense to plaintiffs' claims, defendant AMC must prove that Illinois, New Mexico, and Michigan have adopted the rule, and that AMC has met the rule's requirements. With this background in mind, I turn to whether the FLSA sleep time rule does in fact apply in each of these states.

### A.  Illinois plaintiffs

With respect to their Illinois claims, plaintiffs argue that the sleep time rule is not included in Illinois' statutes or regulations, and that there is no evidence Illinois courts have ever adopted it. ECF No. 91 at 10. AMC counters that statutory silence of this kind does not mean the sleep time rule does not apply. Instead, defendant asserts, Illinois authorities have repeatedly said that the FLSA can be used to interpret the Illinois Minimum Wage Law ("MWL"), and that numerous cases suggest the sleep time rule applies. ECF No. 93 at 5–6. After reviewing the statute, accompanying regulation, and relevant judicial decisions, I agree with plaintiffs.

The MWL states that no employee shall work more than forty hours in a workweek unless he or she is compensated at one and one-half times the regular rate of pay for hours in excess of forty. 820 Ill. Comp. Stat. § 105/4a(1). Regulations interpreting the MWL are found at 56 Ill. Admin. Code §§ 210.100 *et seq*. The definitions section defines "hours worked" as "all

the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110. That section also provides two specific sub-rules regarding meal periods and on-call time, and travel time:

> An employee's meal periods and time spent on-call away from his/her employer's premise are compensable hours worked when such time is spent predominantly for the benefit of the employer, rather than for the employee.

> An employee's travel, performed for the employer's benefit (for example, in response to an emergency call back to work outside his/her normal work hours, or at the employer's special request to perform a particular and unusual assignment, or as a part of the employee's primary duty, or in substitution of his/her ordinary duties during normal hours) is compensable work time as defined in 29 CFR 785.33–785.41 (1994, no subsequent dates or editions), as amended at 26 FR 190.

*Id.* MWL regulations indicate that Illinois' Department of Labor shall exercise its authority in coordination with the federal Department of Labor, and the MWL contemplates that FLSA regulations and interpretations *may* be used to guide interpretation of the MWL. *See id.* §§ 210.100, 210.120. However, the MWL also makes clear that "[i]n areas where the State and federal governments have concurrent powers under their respective statutes, the stricter of the two laws shall prevail." *Id.* § 210.100.

As defendant points out, various Illinois state and federal courts have opined that the FLSA may be used to interpret the MWL. However, these decisions typically involve issues on which the text of the MWL and the FLSA are identical or very similar, or issues on which Illinois interpretive case law is lacking. *E.g. Callahan v. City of Chicago*, 78 F. Supp. 3d 791, 821–22 (N.D. Ill. 2015) (using the FLSA to determine who counted as an "employee" under the MWL because "the IMWL parallels the FLSA so closely," the definitions of "employer" and "employee" were similar across both statutes, and the Illinois Administrative Code used an

"economic reality" test similar to federal *Lauritzen* test), *aff'd sub nom. Callahan v. City of Chicago, Illinois*, 813 F.3d 658 (7th Cir. 2016); *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 783–84 (N.D. Ill. 2011) (noting that the FLSA and the MWL define "employer" similarly, and thus "[t]he FLSA is relevant to plaintiffs' IMWL claims because the IMWL parallels the FLSA, and the same analysis generally applies to both statutes."); *Lewis v. Giordano's Enterprises, Inc.*, 921 N.E.2d 740, 745–51 (Ill. App. Ct. 2009) (using the FLSA to find that the MWL did not permit a release of plaintiffs' claims while a class certification motion was pending because the MWL and FLSA were "analogous" and there was "an absence of Illinois case law interpreting [the] Illinois wage state . . . .").

By contrast, when the MWL differs from the FLSA, courts will not interpret the MWL using the FLSA. In *Driver v. AppleIllinois*, for example, the court rejected plaintiffs' argument that the FLSA should be used to require employers to tell employees their rate of pay and provide detail about tip credit. 917 F. Supp. 2d 793, 798 (N.D. Ill. 2013). The court explained, "the IMWL does not parallel the FLSA on information to be provided to employees, nor is the IMWL silent on the issue. It is different. . . . Where the FLSA and IMWL differ, they must be interpreted differently." *Id.* at 799. *See also Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 783 (N.D. Ill. 2007) (finding Motor Carrier exemption applied to FLSA claim but not MWL claim because text of statutes differed substantively); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 327 n.4 (N.D. Ill. 2010) (rejecting plaintiffs' argument that 56 Ill. Admin. Code § 210.120 imported FLSA's notice requirement regarding tip credit into the MWL).

Here, the MWL mirrors the FLSA in its general overtime provision, as both provide for time and a half pay for every hour worked beyond forty. Defendant points out that the definition

of "hours worked" in 56 Ill. Admin. Code § 210.110 is also close to the federal definition at 29 C.F.R. § 778.223(a) ("hours worked" includes "[a]ll times during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace."). But these two similarities between the FLSA and MWL do not automatically mean that the former must be used to interpret the latter on the sleep time rule. Indeed, the fact that Illinois promulgated a regulation that adopted language from one of the FLSA's regulations, but not others—the sleep time rule is notably absent—suggests that the two statutes differ in substantial ways.

AMC saw fit to remind the Court that administrative interpretations of statutes "are not binding." ECF No. 101 at 6. I thus spend a moment on the weight given to administrative regulations. Illinois law "is clear that administrative regulations, while not binding, are entitled to enhanced acknowledgement and respect from our courts." *People ex rel. Dep't of Lab. v. MCC Home Health Care, Inc.*, 790 N.E.2d 38, 45–46 (Ill. App. Ct. 2003) (citations omitted). "Thus, administrative regulations are presumed to be valid and we are to give effect to each word used." *Id.* at 46. A court referring to the regulations implementing the MWL itself stated that "such administrative rules have 'the force and effect of law' and are therefore entitled to weight and deference so long as they are not inconsistent with the statute pursuant to which they are adopted." *Kerbes v. Raceway Assocs., LLC*, 961 N.E.2d 865, 870 (Ill. App. Ct. 2011) (quoting *Kean v. Wal-Mart Stores, Inc.*, 919 N.E.2d 926, 936 (Ill. 2009)). Nothing indicates that the Illinois regulation at issue here is inconsistent with the MWL, nor does either party so argue. Indeed, 56 Ill. Admin. Code § 210.100 has been cited with approval in numerous Illinois decisions. *E.g.*, *Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 185 (N.D. Ill. 2015); *Callahan*, 78 F. Supp. at 821; *Porter v. Kraft Foods Glob., Inc.*, 2012 WL 7051311 (Ill. App. Ct.

2012); *Whitmore v. Kraft Foods Glob., Inc.*, 798 F. Supp. 2d 917, 923 (N.D. Ill. 2011). I

therefore defer to the Illinois Department of Labor in its definition of "hours worked."

Having established that Illinois' regulation defining "hours worked" has the force and

effect of law, I turn to cases interpreting the relevant language. One is a district court case from

the Northern District of Illinois that defendants cites. There, the plaintiffs sued for unpaid wages

under both the MWL and FLSA for time spent donning and doffing their personal protective

equipment during unpaid meal breaks and before and after shifts. *Mitchell v. JCG Indus.*, 929 F.

Supp. 2d 827, 832 (N.D. Ill. 2013), *aff'd sub nom. Mitchell v. JCG Indus., Inc.*, 745 F.3d 837

(7th Cir. 2014). The lower court first addressed compensation under the MWL and concluded

that the statute was silent on the issue, and that no cases had held donning and duffing time

compensable. *Id.* at 832–34. The *Mitchell* plaintiffs cited to the "hours worked" definition in 56

Ill. Admin. Code. § 210.110, but the court rejected plaintiffs' argument and said it was "not

persuaded" by citation to the regulation "in light of clear authority directing the Court to look to

the FLSA for guidance in addressing this issue." *Id.* at 833. Defendant AMC relies on this

lower court holding to argue that because the FLSA permits employers to exclude sleep time

from hours worked, the MWL allows this exclusion as well. ECF No. 93 at 8.

The Seventh Circuit's analysis belies this conclusion, however. Though the appellate

court affirmed the lower court's decision, it used different reasoning. The Seventh Circuit noted

that the MWL "authorizes the Director of the Illinois Department of Labor to make

administrative regulations 'including definitions of terms, as he deems appropriate to carry out

the purposes of' the minimum wage law," and that the Director promulgated the "hours worked"

definition pursuant to this authority. *Mitchell*, 745 F.3d at 838 (quoting 820 Ill. Comp. Stat. §

105/10(a)). In other words, the appellate court appropriately gave deference to the regulation at issue here that the lower court rejected.

The Seventh Circuit then quoted the "hours worked" language, i.e. "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." It said of the definition, "[t]hat's broad, and standing alone would encompass time spent changing during a meal break, because that can be done only on the employer's premises." *Id.* at 844. It continued "[b]ut there is more to the regulation" and then quoted the meal period clarification. The court noted that these portions of the definition paralleled two federal regulations—29 C.F.R. § 778.223 and § 785.19(a)—but with "a useful clarification," suggesting the Illinois rulemakers had made conscious choices in writing the definition. *Id.* Finally, the Seventh Circuit explained that the donning and duffing time was excluded from hours worked under the MWL because it fell under a different exception. That was the *de minimus* exception, which excludes infrequent and insignificant amounts of time that are difficult to ascertain. *Id.* at 844–46. Thus, it was not by rejecting the regulation or by interpreting the MWL using the FLSA that the Seventh Circuit came to the same conclusion as the lower court. Instead, it looked to the text of the Illinois regulation and Illinois case law on the precise issue before it.

The Seventh Circuit's decision in *Mitchell* suggests the most logical reading of the "hours worked" definition. It is "broad," and if it would encompass time employees spend changing during a meal break on an employer's premises (but-for the meal period and *de minimus* exceptions), it would certainly cover hours allocated for plaintiffs' sleep. During that time plaintiffs are unquestionably "on the employer's premises," as the definition reads, and they are

arguably also "on duty" because work assignments can interrupt their sleep at any time. A plain reading of Illinois' regulation thus indicates that sleep time should be included in hours worked.

AMC insists that because the Illinois regulation is so similar to the FLSA regulation at 29 C.F.R. § 778.223, I should interpret the former by importing the FLSA sleep time rule into Illinois. I come to the opposite conclusion. As discussed at the start of Section IV, that the federal Department of Labor created a new, distinct exception for sleeping time indicates the most natural reading of 29 C.F.R. § 778.223 includes, not excludes, sleeping time. The carveout is necessary because the default rule would count sleeping time as hours worked, and thus as compensable overtime. By contrast, Illinois adopted a regulation defining hours worked nearly identically to the federal definition and included two exceptions that parallel federal exceptions for meal periods and travel time. But it did *not* adopt the sleep time rule when it promulgated this definition of "hours worked," despite almost certainly being aware of such a rule. Courts tasked with interpreting statutes and regulations frequently rely on canons of construction. The one most relevant here is *expressio unius est exclusio alterius*, or "the expression of one is the exclusion of others." *See, e.g.*, *Christensen v. Harris Cty.*, 529 U.S. 576, 583 (2000) (applying this canon in the context of FLSA's overtime provision). Illinois' explicit inclusion of some exceptions suggests a conscious decision to exclude others, including the sleep time rule.

In its effort to convince the Court that Illinois *has* adopted the sleep time rule, AMC relies heavily on *Bess v. Daniel*. *Bess* involved "homemakers" who provided care for low-income individuals and spent twenty-four hours a day at their patients' home while doing so. The plaintiffs sought compensation for the full number of hours, including sleep time. The court wrote that "[t]he general rule to be applied . . . is that sleep time may be work time if it is subject

16

to serious interruptions or takes place under conditions substantially less desirable than at the employee's home." *Bess v. Daniel*, 35 N.E.2d 556, 560 (1976). I do not read *Bess* as reflecting an adoption by Illinois' courts of the FLSA sleep time rule in order to interpret the MWL. The court summarized and applied a rule derived from federal courts interpreting federal law. *Id.* The court was not interpreting, nor did it even reference, Illinois' own minimum wage law. Nor are the other two cases on which defendant relies heavily, *Molina* or *Bernardi*, on point. Both involved analysis of on-call time away from an employer's premises, whereas the time in question here is sleep time spent entirely on AMC's premises. *Molina*, 566 F. Supp. at 775–76; *Bernardi v. Village of North Pekin*, 482 N.E.2d 101, 102 (Ill. App. Ct. 1985). I also note that no court has interpreted the "hours worked" definition in Illinois as excluding sleep time, unlike the *de minimus* exception that the *Mitchell* court identified in Illinois precedent.

Defendant's continued insistence that Illinois defers to guidance from the FLSA is also unpersuasive. ECF Nos. 93 at 6; 99 at 8. This principle is only applicable where the two laws parallel each other or where the MWL is silent, and I have determined that neither is the case here. If Illinois had no regulation defining "hours worked," then looking to all the FLSA's regulations and policies to interpret the scope of hours worked would be appropriate. But that is not the situation the Court faces. The FLSA and MWL differ substantially on this point. I will not inject into the MWL a rule so drastically limiting employees' overtime hours simply because the FLSA includes it. To do so would undermine the purpose of the MWL, which is to "establish a minimum wage standard for workers at a level consistent with their health, efficiency and general well-being." 820 Ill. Comp. Stat. § 105/2.

Finally, I address AMC's point that each plaintiff agreed to non-compensation for

sleeping hours under defendant's sleep time policy. This argument is unavailing as well. Illinois' minimum wage and wage payment laws "by their very nature deny parties the right to contract for the payment of wages at amounts less, and at intervals less frequent, than the law requires." *O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1049 (N.D. Ill. 2002). In fact, "it is their manifest public policy to limit freedom of contract with respect to the payment of wages in order to serve more important public purposes." *Id.* These rights are thus "nonwaivable." *Id.* Plaintiffs cannot contract around this right by agreeing to AMC's sleep time policy. To do so would subvert the very purpose of the MWL. The sleep time hours in question fall under the definition of "hours worked" in 56 Ill. Admin. Code § 210.110. Because there is no legal authority that excepts these hours from overtime compensation, plaintiffs have a right under 820 Ill. Comp. Stat. § 105/4a(1) to receive overtime pay for them.

Defendant AMC has not met its burden of proving that the sleep time rule applies in Illinois. I therefore GRANT partial summary judgment to plaintiffs as to their Illinois claims. The only issues left for trial for Illinois plaintiffs are the scope of the class and damages.

### B. New Mexico plaintiffs

Plaintiffs argue that the sleep time rule does not apply to the New Mexico plaintiffs' claims because neither the New Mexico Minimum Wage Act ("MWA"), its regulations, or case law interpreting the law have ever adopted or imported the FLSA sleep time rule. ECF No. 91 at 13–15. AMC responds that the sleep time rule applies because New Mexico's minimum wage law is intended to be interpreted consistently with the FLSA, and the sleep time rule has been expressly incorporated into a manual issued by the state's labor agency. ECF No. 93 at 12. Ultimately, I agree with defendant that the manual's incorporation of the sleep time rule is

persuasive. I thus find that the rule applies to claims under New Mexico law.

The New Mexico minimum wage law reads, "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours." N.M. Stat. § 50-4-22(E). The MWA is implemented by the Labor Relations Division ("LRD"), which is part of the New Mexico Department of Workforce Solutions (the state's equivalent of a Department of Labor). N.M. Admin. Code 11.1.4.1.

Neither the MWA nor its corresponding administrative regulations define "work" or explain what counts as compensable work time in New Mexico. *See* N.M. Stat. § 50-4-21; N.M. Admin. Code 11.1.4. As a result, New Mexico courts often interpret the MWA using the FLSA. The MWA's administrative regulations state that "[i]n making a decision, the LRD may rely upon definitions used within and decisions relating to the FLSA." N.M. Admin. Code 11.4.1.118. Use of the FLSA for such interpretation is only appropriate when the MWA and FLSA are similar, however, or when the MWA is silent on an issue. *E.g.*, *Rivera v. McCoy Corp.*, 240 F. Supp. 3d 1150, 1155 (D.N.M. 2017) (finding that employers bear the burden of proving exemptions under the MWA "consistent with" the FLSA because the MWA did not have regulations interpreting the statutory language, and courts frequently looked to the FLSA to interpret similar MWA language); *Sinclaire v. Elderhostel, Inc.*, 287 P.3d 978, 980–81 (N.M. Ct. App. 2012) (using the FLSA to define the scope of a workweek under the MWA because this interpretation did not "do violence" to either the language or purpose of the MWA's overtime provision); *Garcia v. Am. Furniture Co.*, 689 P.2d 934, 937–38 (N.M. Ct. App. 1984) (using the FLSA to interpret the scope of the term "employ" in the MWA because the definitions of

"employ," "employer," and "employee" were common across the two statutes).

Nonetheless, New Mexico courts do not hesitate to reject use of the FLSA for MWA interpretation when the two statutes differ. They have said, "[w]e recognize that this Court has declined to follow the FLSA when we consider it to be inconsistent with state law." *Sinclaire*, 287 P.3d at 981. *See, e.g.*, *Armijo v. Fedex Ground Package System, Inc.*, 405 F. Supp. 3d 1267, 1284 (D.N.M. 2019) (declining to use the FLSA to interpret the MWA's overtime exemption for commission and piecework employees because the MWA had a "uniquely broad statutory exemption" that did not mirror the FLSA); *Segura v. J.W. Drilling, Inc.*, 355 P.3d 845, 848 (N.M. Ct. App. 2015) (rejecting use of the FLSA Portal-to-Portal amendment to interpret the scope of compensable time under the MWA when amendment had "no analogue" in the MWA); *N.M. Dep't of Lab. v. Echostar Commc'ns Corp.*, 134 P.3d 780, 783 (N.M. Ct. App. 2006) (reasoning that whether the MWA permitted a fluctuating workweek could not be addressed with reference to the FLSA in part because it was a "differently worded statute").

Plaintiffs insist that the MWA differs substantially from the FLSA on the sleep time issue because the New Mexico statute and regulations include no sleep time rule. This is true. *See generally* N.M. Stat. §§ 50-4-1 *et seq*; N.M. Admin. Code 11.1.4. But the sleep time rule is expressly adopted in the Department of Workforce Solution's 2019 Investigations Manual for the Labor Relations Division. The purpose of the manual is to guide LRD investigators in assessing wage claims filed by New Mexico workers. NEW MEXICO DEPARTMENT OF WORKFORCE SOLUTIONS, INVESTIGATIONS MANUAL LABOR RELATIONS DIVISION, ii (Nov. 12, 2019) ("Investigations Manual"). Though investigators are expected to follow the manual, the manual is clear that it "does not by virtue of its application create binding rules outside of the lawful

rulemaking process." *Id.* at iii–iv.

The manual also includes an introductory section explaining that it references the FLSA when interpreting the MWA in certain circumstances, in line with New Mexico legal authority I just discussed. This "Interpretive Note" states in relevant part

> For a variety of reasons, there are many more sources of law interpreting the FLSA than the MWA. . . . However, New Mexico regulations interpreting the MWA grant the LRD discretion to use FLSA precedents to interpret the MWA. In 11.1.4.118 NMAC, "Consideration of Federal Fair Labor Standards Act," New Mexico regulations provide: "In making a decision, the LRD may rely upon definitions used within and decisions relating to the FLSA, 29 U.S.C. 201 et seq."
>
> The legal authority for this regulation stems from several New Mexico appellate decisions, which hold that FLSA regulations and precedents may be used as persuasive authority to interpret requirements of the MWA that are similar or identical to the FLSA. However, when a provision of the FLSA has no counterpart in the MWA, or when the language of the two statutes differs on a particular issue, it is not appropriate to use federal precedent to interpret the MWA.
>
> Consistent with the authorities outlined in this section, LRD uses FLSA regulations and other FLSA precedents to interpret several provisions of the MWA or Wage Payment Act ("WPA") in this Manual. However, whenever LRD uses a FLSA regulation or other precedent to interpret the MWA or the WPA, the relevant section of the Manual justifies the need to do so by explaining:
>
> - There is no New Mexico regulation or precedent interpreting the relevant MWA or WPA provision; and
> - The FLSA provision LRD will use to interpret the MWA or WPA provision is similar or identical to that MWA or WPA provision; or
> - It is the subject of legitimate dispute as to whether a FLSA provision is similar to a MWA or WPA provision, and thus in lieu of silence on the issue, LRD will proactively adopt the FLSA regulation or other precedent to interpret the MWA or WPA.

*Id.* at ii–iii. The LRD thus sets out a well-reasoned process, aligned with existing regulations and New Mexico case law, for determining when the FLSA can be used to interpret the MWA.

Section E of the manual is entitled "Hours of Work: What is Compensable Work time?" *Id.* at 44. Here, the LRD has used the FLSA to define "work" under the MWA and provided an

explanation of why it has done so, in accordance with its "Interpretive Note."  It explains

> The MWA and WPA do not define the word "work," and there is no state case law or regulation defining this term or delineating what is compensable work time.  Because the FLSA, MWA, and WPA each define the term "employ" as "suffer or permit to work," and because there are no New Mexico regulations or precedent in the MWA or WPA context, LRD will, as a matter of policy in this instance assume the concept of "work" means the same thing under the FLSA, MWA, and the WPA, and will apply FLSA regulations and appellate case law defining the concepts of "work" and compensable work time as outlined in this Investigations Manual. . . .  For this reason, the sections below discuss FLSA regulations and appellate case law on the topics of "work" and compensable work time that LRD will apply in its enforcement activities.

*Id.* at 44–45.  The manual then adopts the FLSA's sleep time rule (29 C.F.R. § 785.22) in its

entirety, along with other FLSA rules defining regarding compensable work time.  *Id.* at 51–52.

Plaintiffs urge me to reject the Instructions Manual's adoption of the sleep time rule

because it is non-binding.  They contend that "the Manual cannot be relied on by this Court in

determining whether New Mexico has adopted the FLSA sleep time regulation."  ECF No. 91 at

16.  I disagree.  While the manual is not binding, it is certainly persuasive, and it persuades me.

New Mexico courts accord similar deference to non-binding agency legal determinations

as federal courts.  Under federal law, the weight given to agency interpretations in opinion

letters, policy statements, agency manuals, and enforcement guidelines should depend upon "the

thoroughness evident in its consideration, the validity of its reasoning, its consistency with

earlier pronouncements, and all those factors which give it power to persuade, if lacking power

to control."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  As under federal law, a court

assessing an agency interpretation under New Mexico law "is not bound by the agency's

interpretation [of its own statute] and may substitute its own independent judgment for that of the

agency because it is the function of the courts to interpret the law."  *Morningstar Water Users*

*Ass'n v. N.M. Pub. Util. Comm'n*, 904 P.2d 28, 32 (N.M. 1995).  Courts "will reverse the

agency's interpretation of a law if it is unreasonable or unlawful." *New Mexico Indus. Energy Consumers v. PRC*, 168 P.3d 105, 111 (N.M. 2007) [hereinafter *NMIEC*]. Nonetheless, they accord some deference to an agency's interpretation of its own governing statutes. *Pub. Serv. Co. of New Mexico v. New Mexico Pub. Regul. Comm'n*, 444 P.3d 460, 468 (N.M. 2019). In particular, courts "will confer a heightened degree of deference to legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Morningstar*, 904 P.2d at 32 (internal quotation and citation omitted). Much like *Skidmore* deference then, New Mexico's deference to such agency determinations depends basically on whether the determination is rational and persuasive.

New Mexico courts have afforded deference to non-binding agency legal determinations in the past. In *Jicarilla*, for instance, the Supreme Court of New Mexico reviewed a determination by the Department of Taxation and Revenue that elk are not livestock, pursuant to a division order interpreting both a statute and a regulation. The court assessed the order under a reasonableness standard and ultimately upheld the Department's interpretation. *Jicarilla Apache Nation v. Rodarte*, 103 P.3d 554, 560–62 (N.M. 2004). In *Quynh Truong* the court analyzed a policy letter from the New Mexico Public Regulation Commission's Superintendent, which purported to tell a defendant insurance company that its conduct was exempt from an act banning unfair or deceptive trade practices. *Quynh Truong v. Allstate Ins. Co.*, 227 P.3d 73, 80 (N.M. 2010). In dicta the court noted an important purpose of the relevant statute was "to give deference to the expertise of the relevant regulatory body." *Id.* at 82. It then said, "[w]hen the Superintendent, with both expertise and authority in insurance matters, makes and expressly articulates a lawful decision to permit an insurer's conduct, the judicial branch should respect the

Superintendent's authority to do so." *Id. Cf. Fitzhugh v. New Mexico Dep't of Lab., Emp. Sec. Div.*, 922 P.2d 555, 562 (N.M. 1996) (noting in the employment context that courts will accord some deference to agency's interpretation of a statute, "especially if the legal question implicates agency expertise").

The Investigations Manual at issue here—and in particular, the LRD's decision to adopt the FLSA sleep time rule—is a reasonable interpretation of the MWA. This Court thus affords it deference. Discerning what employee time counts as hours worked is a technical question that "implicate[s] special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *NMIEC*, 168 P.3d at 112. The FLSA and the MWA define "employ" exactly the same way. The MWA itself is silent as to what time constitutes compensable work hours under the statute. Nor do administrative regulations or New Mexico judicial decisions provide further clarity, as both the LRD and plaintiffs themselves observed. ECF No. 91 at 13–14. In harmony with binding New Mexico precedent, then, the LRD determined that the MWA sufficiently mirrored the FLSA in this area that the FLSA could be used to interpret the MWA's silence.

I am not bound by the LRD's determination and may substitute my own judgment on the law. However, I defer to the LRD here. No New Mexico authority that I have reviewed suggests the LRD's decision to adopt the sleep time rule is anything other than sound and logical. The manual's explanation passes muster under the "unreasonable or unlawful" standard, *NMIEC*, 168 P.3d at 111, and the Court accepts it as persuasive. I therefore find that defendant AMC has carried its burden of proving that the FLSA sleep time rule applies in New Mexico.

It is undisputed that AMC provided adequate sleeping facilities to plaintiffs, that

plaintiffs usually enjoyed an uninterrupted night's sleep, and that AMC compensated plaintiffs for sleep time when those shifts were interrupted. As a result, AMC has proved that it met the requirements of the sleep time rule under 29 C.F.R. § 785.22. Defendant's motion for summary judgment is thus GRANTED as to the New Mexico plaintiffs' claims.

### C.  <u>Michigan plaintiffs</u>

As in their arguments for Illinois and New Mexico, plaintiffs contend that Michigan law has never adopted the sleep time rule, and that the rule is inapplicable to their Michigan claims. ECF No. 91 at 17. Meanwhile, AMC counters that the sleep time rule applies because the Michigan legislature intended for its minimum wage law to be interpreted consistently with the FLSA. ECF No. 93 at 17. There is a wrinkle in the Michigan minimum wage law, however, that neither set of parties fully addresses. Its importance is paramount—it takes defendant AMC out of the Michigan minimum wage law altogether for overtime issues such as this one.

Michigan's minimum wage statute, called the Michigan Workforce Opportunity Wage Act ("MWOWA"), provides for overtime compensation of one and one-half times the regular rate of employee pay—just like the FLSA, the Illinois MWL, and the New Mexico MWA. Mich. Comp. Laws § 408.414a. Unlike the Illinois and New Mexico laws, though, it has a provision on employer exceptions that expressly interacts with the FLSA. Section 408.420 reads

> This act does not apply to an employer that is subject to the minimum wage provisions of the [FLSA], unless those federal minimum wage provisions would result in a lower minimum hourly wage than provided in this act. Each of the following exceptions applies to an employer who is subject to this act only by application of this subsection:
>
>> (a) Section 4a does not apply [to the employer]. . . .

"Section 4a" is Mich. Comp. Laws § 408.414a, the overtime provision cited above. The federal minimum wage currently is lower than Michigan's current minimum wage, and it has been for

the entire class period at issue here.  *Compare* Mich. Comp. Laws § 408.414 ($8.15 in 2014) *with* 29 U.S.C. § 206 ($7.25 since 2009).  Thus, this exceptions provision means that any employer who is subject to the FLSA, but for the federal minimum wage being lower than Michigan's, is *not* subject to Michigan's overtime rule in § 408.414a.  In other words, the statute ensures that all Michigan workers get paid the highest minimum wage possible (i.e. the state's minimum wage) regardless of whether their employer is subject to the FLSA or the MWOWA, while it simultaneously permits employers who fall under the FLSA to abide by only the FLSA's overtime provisions and not Michigan's.

At first glance the statute's construction seems confusing.  But a careful reading makes its meaning clear.  In *Vernon v. Go Ventures*, for example, the court explained the interplay of the MWOWA and the FLSA as follows:

> The Workforce Opportunity Wage Act exempts from compliance employers subject to the FLSA's minimum wage provisions, "unless those federal minimum wage provisions would result in a lower minimum hourly wage than provided in this act."  Mich. Comp. Laws. § 408.420(1).  However, if an employer is only subject to both [sic] the Workforce Opportunity Wage Act because the state minimum wage exceeds the federal minimum wage, then "Section 4a does not apply."  Mich. Comp. Laws § 408.420(1)(a).  Section 4a, Mich. Comp. Laws § 408.414a, governs overtime compensation and requires a time-and-a-half premium. . . .  Accordingly, employers subject to the Workforce Opportunity Wage Act solely because Michigan's minimum wage exceeds the federal minimum wage are exempt from the Act's overtime provisions, except for certain childcare and domestic service employees.

*Vernon v. Go Ventures, LLC*, No. 16-CV-13818, 2017 WL 2002011, at *5 (E.D. Mich. May 12, 2017).  A statute's plain language, if unambiguous, carries the day.  *Massey v. Mandell*, 614 N.W.2d 70, 72 (Mich. 2000) ("[W]hen the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is to apply the terms of the statute to the circumstances in a particular case.").  Here the

statute is clear—defendant AMC is not subject to the overtime provisions in Michigan's minimum wage law at all. That means I need not reach whether Michigan has adopted the FLSA sleep time rule.

Plaintiffs address Mich. Comp. Laws § 408.420 in their motion. Recognizing that this provision might sink their Michigan claims, they insist the reading of the statute I have just explained is "both anomalous and absurd." ECF No. 81 at 18. They then urge this Court to certify interpretation of the statute to the Michigan Supreme Court. *Id.* I disagree with plaintiffs that this reading of the statute is illogical. I have found three other decisions that come to the same interpretation as *Vernon*. One of them, *Arrington*, is cited by plaintiffs. That case reviewed the MWOWA's history, noting that in 2006 the Michigan legislature amended it to increase the minimum wage. *Arrington v. Michigan Bell Telephone*, 746 F. Supp. 2d 854, 857–58 (E.D. Mich. 2010). The court explained, "[r]ecognizing that this amendment would bring many new employers under the [MWOWA] only by virtue of the fact" that the federal minimum wage would be higher than the state's, "the legislature also amended section 14 to add [the exceptions provision]." *Id.* at 857.

The *Arrington* court then went on to say,

> The exemption language plainly states that employers subject to the FLSA are not also subject to the [Michigan minimum wage law] despite section 14's provision that the exemption does not apply where the "federal minimum wage provisions would result in a lower minimum wage," even in light of the increase in the state minimum wage.

*Arrington*, 746 F. Supp. 2d at 857. Contrary to being "anomalous" or "absurd," "[t]he natural reading of the text allows for no other conclusion, and no other statutory interpretation is necessary." *Id.* In reaching this interpretation the court also relied on legislative analysis prepared for the 2006 amendments and secondary sources analyzing the amendments. *Id.* at 858.

*See also Ruffin v. Motorcity*, No. 12-11683, 2012 WL 12929818, at *2 (E.D. Mich. Sept. 19, 2012) (concluding that plaintiffs could not bring claims for violation of Michigan's overtime law because employer was only subject to Michigan's minimum wage law based on the difference between the federal and state minimum wages); *Pacheco v. Boar's Head Provisions Co.*, No. 1:09-CV-298, 2010 WL 1323785, at *3 (W.D. Mich. Mar. 30, 2010) (same). With four existing judicial opinions reaching the same conclusion, it would be neither necessary nor productive to certify this question to the Michigan Supreme Court.

Defendant's motion raises one other peculiarity that I must address. AMC inexplicably writes that it "assumes it is covered by the Michigan minimum wage statute" for purposes of summary judgment. ECF No. 99 at 19. Thus, unlike the defendants in *Vernon*, *Arrington*, *Ruffin*, and *Pacheco*, AMC does not argue that Mich. Comp. Laws § 408.420 renders Michigan's overtime provisions inapplicable to its employees. It assumes the provisions *are* applicable. But the Court cannot assume that defendant is subject to Michigan's overtime provisions when the statute unambiguously says it is not. Parties may "waive" application of a statute to themselves or their claims in certain circumstances, such as with statutes of limitations. *See, e.g.*, Fed. R. Civ. P. 8(a) (noting affirmative defenses like statute of limitations and release of liability are waived if not affirmatively pled). This situation is quite different. To find that AMC can "waive" or opt-in to Michigan's overtime rules under § 408.414a would contradict the statute's plain text. It would constitute judicial rewriting of a statute—something I will not and cannot do.

Despite its odd position on the issue, AMC undoubtedly falls under the § 408.420 employer exception. It is subject to the FLSA, and thus it is also subject to the MWOWA only because Michigan's minimum wage is higher than the federal one. Michigan's overtime

protections in § 408.414a do not apply to AMC.  To the extent Michigan plaintiffs seek compensation for unpaid overtime in Michigan, they must do so under the FLSA.  The FLSA sleep time rule would apply to those claims, however, and the Court has already found above that AMC has met the sleep time rule requirements.  Defendant's motion for summary judgment is therefore GRANTED as to the Michigan plaintiffs' claims.

## ORDER

1. Plaintiffs' partial motion for summary judgment [ECF No. 91] is GRANTED as to the Illinois plaintiffs' claims.  It is DENIED as to the New Mexico and Michigan plaintiffs' claims.

2. Defendant's motion for summary judgment [ECF No. 93] is GRANTED as to the New Mexico and Michigan plaintiffs' claims.  It is DENIED as to the Illinois plaintiffs' claims.

      DATED this 17th day of May, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge