UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
1:19-cv-00484-RBJ-SKC

*FILED ELECTRONICALLY*

TOM WAGNER *et al.*                                                PLAINTIFFS

v.

AIR METHODS CORPORATION, a Colorado Corporation            DEFENDANT

_____

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL CERTIFICATION OF CLASS AND
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

_____

The Plaintiffs submit this unopposed Motion for Final Certification of the Class

and Final Approval of the class action settlement.

**TABLE OF CONTENTS:**

TABLE OF AUTHORITIES ............................................................................2

I. INTRODUCTION............................................................................................4

II. FACT & PROCEDURAL HISTORY ...........................................................5

III. SUMMARY OF SETTLEMENT ................................................................7

IV. ARGUMENT & AUTHORITIES ..............................................................14

    A. Final Approval of the Amended Settlement is Appropriate ..................14

        1. The Standards and Procedures for Final Approval.......................14
        2. The Prerequisites of Rule 23(a) Remain Satisfied .......................16
        3. The Prerequisites of Rule 23(b)(3) Remain Satisfied ..................17
        4. The Proposed Amended Settlement was Fairly and Honestly Negotiated..... 17
        5. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome
           of the Litigation in Doubt.................................................................. 18
        6. The Value of an Immediate Recovery Outweighs the Mere Possibility
           of Future Relief After Protracted and Expensive Litigation........................... 19
        7. It is the Judgment of the Parties that the Proposed Amended
           Settlement is Fair and Reasonable..................................................21
        8. Rule 23(g) is Satisfied. The Class Representatives and Class Counsel

have Adequately Represented the Class..........................................................21

9. The Relief Provided to the Class is Adequate, and the Proposed Amended Settlement Treats Class Members Equitably Relative to Each Other............ 22

10. The Service Payments to Named Plaintiffs are Reasonable........................... 23

B. The Proposed Form of Notice Satisfied Due Process... ..........................................25

C. The Attorneys' Fees and Costs Should Receive Final Approval... ........................26

V. CONCLUSION ..................................................................................................31

TABLE OF AUTHORITIES

*Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804 (10th Cir. 1977)........... 14

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)........................................................ 14

*Hennessy v. Bacon*, 137 U.S. 78 (1890)....................................................................... 14

*Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540 (D. Colo. September 15, 1989)...... 14

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir. 1984)..................................... 14

*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180 (10th Cir. 2002).................14, 16

*Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059
(D. Kan. June 18, 2020).................................................................................................15

*Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita*,
2021 WL 1387110 (D. Colo. April 13, 2021)...................................................................... 15

*Lucas v. Kmart Corp.*, 234 F.R.D. 688 (D. Colo. March 22, 2006)........................... 15, 25

*Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96 (2nd Cir. 2005)..................................15

*Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993)................................................... 19, 26, 27

*Devlin v. Scardelletti*, 536 U.S. 1 (2002)......................................................................... 19

*Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597 (D. Colo. 1974)................. 19

*Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117 (D. Colo.
February 8, 2016).....................................................................................................19, 23

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011)............... 20, 21

*Staton v. Boeing*, 327 F.3d 938 (9th Cir.2003)............................................................. 24

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII- A, L.P.*,
888 F.3d 455 (10th Cir. 2017)........................................................................... 24

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)................................................. 24

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.,* 2010 WL 5387559
(D. Colo. Dec. 22, 2010)........................................................................ 24, 26, 27

*Rothe v. Battelle Memorial Institute*, 2021 WL 2588873
(D. Colo. June 24, 2021).......................................................... 24, 25, 27, 28, 30

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)..................... 24

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)................. 25

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)......................................... 25

*DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935
(10th Cir. 2005)................................................................................................ 25

*Anderson v. Merit Energy Co.*, 2009 WL 3378526 (D. Colo. Oct. 20, 2009)........... 27, 29

*Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849 (10th Cir. 1993)....... 27

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988)..................... 27

*Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983)............................................... 27

*Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)...................... 27, 28

*In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976)................... 28

*Whittington v. Taco Bell of America, Inc.,* 2013 WL 6022972 (D. Colo. Nov. 13,
2013)........................................................................................................... 29, 30

*Shaw v. Interthinx, Inc.*, 2015 WL 1867861 (D. Colo. Apr. 22, 2015)........................ 30

*Wells v. Sullivan*, 907 F.2d 367 (2d Cir. 1990)................................................. 30

*In re Abrams*, 605 F.3d 238 (4th Cir. 2010)..................................................... 30

*Farley v. Family Dollar Stores, Inc.*, WL 5488897 (D. Colo. Oct. 30, 2014)................ 30

*Farrar v. Hobby*, 506 U.S. 103 (1992)............................................................. 31

*Dalal v. Alliant Techsystems, Inc.*, 927 F. Supp. 1374 (D. Colo. 1996)......................... 31

Fed. R. Civ. Pro. 23................................................................ 4, 15, 16, 17, 21, 22, 25, 26, 31

*Newberg on Class Actions* (5th ed. 2019)....................................................................... 22

*Manual for Complex Litigation* (4th ed. 2004)...............................................................26

EXHIBIT 1 – Declaration of Lisa Pavlik, Senior Project Manager, Rust Consulting, Inc.

EXHIBIT 2 – Class Counsel Declarations for Attorney's Fees & Expenses

## I.      INTRODUCTION[1]

The parties reached agreement on the Class Action Settlement Agreement and Release (Settlement Agreement) after exhaustive litigation and years of intense negotiations. The Settlement reached includes a monetary maximum Gross Settlement Fund amount of $4,093,000, which includes up to $1,227,900 in attorneys' fees (30% of the common fund) and $45,765.83 in costs. Plaintiffs submit this unopposed Motion for final approval of the Settlement for the class action pursuant to Fed. R. Civ. P. 23.

On February 19, 2019, Plaintiffs brought this action on behalf of all current and former flight paramedics and nurses in Illinois, Michigan and other states not relevant to this Motion[2] who worked for the Defendant, Air Methods Corporation ("Defendant" or "AMC") for unlawfully deducted "sleep time" from employees' overtime calculations. Plaintiffs alleged that all Class Members suffered from Defendant's practice of failing to pay overtime for all hours, including sleep time, worked in excess of forty (40) hours in a week. Plaintiffs then subsequently filed their First Amended Complaint which included claims for flight paramedics and nurses working for AMC in New Mexico

---

[1] Please see the Class Action Amended Settlement Agreement and Release (Doc. #129-1) for the definition of terms used in this Motion.

[2] Those other states were Indiana, Maryland, and North Carolina. However, it was later discovered that state claims in those states were not cognizable.

during the class period. Accordingly, it is Named Plaintiffs' contention that Defendant's alleged failure to pay overtime pay to Plaintiffs and all other similarly situated employees for all hours worked over forty (40) in a workweek violates the wage and hour statutes of Illinois, Michigan and New Mexico. Defendant denies such allegations and contend that they complied with the various state laws.

## II.   FACT AND PROCEDURAL HISTORY

After intense litigation of the issues and briefing of same by the parties, this Court entered an Order on December 29, 2020 (Doc. #92) which served to grant Plaintiffs' Motion for Class Action Certification. The Court certified three overtime classes as follows:   "All persons employed by AMC as flight paramedics or flight nurses in [Michigan][New Mexico][Illinois] from February 19, 2016 to the present." (*Id.*, p. 10). The Court further appointed Arnold & Miller, Cowan Law Office, and Moody & Stanford as class counsel. (*Id.*).

The parties continued to vigorously litigate this matter while at the same time continuing negotiations in the hopes of resolving same. The parties have engaged in considerable discovery.  Defendant produced, and Plaintiffs analyzed, tens of thousands of pages of documents, including payroll and time records for over 600 AMC employees in Illinois, Michigan and New Mexico. Several of the Named Plaintiffs were deposed, and experts[3] were hired by each side to review and analyze the payroll and associated documents produced in this action.

Throughout this entire time period, the parties continued to negotiate. However, those negotiations ultimately did not bear fruit and both sides then filed Motions for

---

[3] The experts' opinions about the base overtime wage owed (if AMC violated the state statutes) were in conformity and almost exactly the same.

Partial Summary Judgment on the liability issue in this matter (i.e., did each or any of the three states adopt the FLSA's sleep time exemption). By Order dated May 17, 2021, this Court entered summary judgment in favor of AMC on the Michigan and New Mexico plaintiffs' claims, and entered summary judgment in favor of the Illinois' plaintiffs. (Doc. # 113). Following the entry of this Order, with each side realizing the risks of further litigation and appeals, the parties continued to negotiate and attempted to resolve all of the Plaintiffs' claims, realizing the impact of the Court's summary judgment orders.

These negotiations resulted in an agreement to settle the Plaintiffs' claims on the terms set forth in the Settlement Agreement (previously filed herein as Exhibit A to Doc. #127). Specifically, following extensive negotiations, the parties agreed to settle Plaintiffs' claims as to <u>all</u> current and former flight paramedics and nurses who worked for AMC in Illinois, Michigan and New Mexico from February 19, 2016 to the present, despite summary judgment having been granted AMC with respect to New Mexico and Michigan. On August 17, 2021, the Court entered an Order (Doc. #128 – Docket Entry Order) providing preliminary approval to that Settlement Agreement. Thereafter, on October 18, 2021, the Plaintiffs moved the Court to redefine the previously certified class, by agreement with the Defendant, in order to remove from the class 115 employees who met the definition of the Class as certified, and who did not opt out, but also <u>either did not work any overtime during the Class Period, or were already compensated for any overtime worked</u>. (Doc. #129). An Amended Settlement Agreement executed by the parties was attached as Exhibit 1 to Doc. #129. On October 20, 2021, the Court granted the motion, and amended its December 29, 2020 Order (Doc. #92) certifying the class, thereby removing the 115 employees who would not be entitled to any payment under the settlement of the parties, and provided preliminary approval of the Amended

Settlement Agreement. A final fairness hearing is scheduled for February 2, 2022, and the parties have taken all necessary steps to comply with the actions required by the Amended Settlement Agreement (having secured the services of Rust Consulting, Inc. as settlement administrator, and provided Rust with the necessary information so that Notice of the Amended Settlement Agreement with Opt-Out Forms could be mailed to Class Members). As reflected by Doc. #133, the Defendant has notified all appropriate federal and state officials of the terms of the Settlement pursuant to 28 U.S.C. 1715(d). The Plaintiffs now seek final certification of the Class and final approval of the class action settlement.

## III.    SUMMARY OF SETTLEMENT

As stated above, this Court has certified three classes, as follows: "[T]hose persons employed by AMC as flight paramedics or flight nurses in [Michigan] [New Mexico] [Illinois] from February 19, 2016 to December 29, 2020, and who are/were part of the certified class and who worked overtime during the Class Period and were not properly compensated for such overtime." The Court has further appointed Arnold & Miller, J. Robert Cowan, and Moody & Stanford as class counsel.

The Court certified a class of 634 members on December 29, 2020, based on information then available to the parties and the Court. It was subsequently learned, and agreed to between the parties, that the actual total class size was 668. The Class Administrator mailed Notices to all 668 Class Members on February 19, 2021. A total of 34 Class Members submitted opt-out forms, ultimately leaving a class size of 634, although the records demonstrated that not all of them were actually owed some amount of overtime compensation in this matter. The parties subsequently agreed, after an exhaustive analysis of all relevant records, that only 519 of those 634 employees were

owed overtime during the Class Period, and thus entitled to participate in the settlement. This was because there were 115 employees who met the definition of the Class as certified on December 29, 2020, and who did not opt out, but also either did not work any overtime during the Class Period, or who were already compensated for any overtime worked. On October 20, 2021, the Court amended its class certification to reflect that only those 519 employees would be included in the class.

If finally approved, the Defendant will pay the total settlement amount (Gross Settlement Fund), in two installments,[4] into a settlement fund to resolve the claims as detailed in the Amended Settlement Agreement. Class Members who fail to opt-out will receive their share of the Net Settlement Fund (as calculated based upon a review of AMC's time and payroll records) – after deductions for the approved attorneys' fees and costs for Class Counsel ($1,227,900 in attorneys' fees and $45,765.83 in costs). Any outstanding and yet-to-be incurred third-party administrator's fees and costs, as well as the applicable employer-side payroll taxes will be paid by AMC in addition to the Net Settlement Amount. The Net Settlement Fund will be administered by the Administrator, Rust Consulting.

AMC has provided the Administrator the last known address for each Class Member. The Amended Settlement Agreement provided for the Administrator to engage in several layers of outreach to the Settlement Class Members, and the notice plan under the Amended Settlement Agreement comported with best practices regarding notice to make participation as easy as possible for the Class Members. For example, the Administrator was required to, *inter alia*, finalize and mail the Notice to Class Members;

---

[4] The parties have agreed that all payments under the Settlement Agreement will be effectuated in two equal installments, twelve (12) months apart.

maintain a static website where the Notice could be downloaded; and independently respond to the inquiries of Class Members regarding relevant procedures.

As evidenced by the Declaration of Lisa Pavlik, Senior Project Manager for Administrator, Rust Consulting, Inc., (attached as Exhibit 1 hereto), the Administrator has taken the following actions:

1) Obtained a unique mailing address to receive Opt-Outs, objections, disputes, undeliverable Class Notices and other communications regarding the Settlement;

2) Obtained a unique telephone number for Class Members to call with questions regarding the Settlement (the telephone number was included in the Class Notice);

3) Obtained a unique facsimile number of (877) 465-4817 for receiving Opt-Outs and other communications about the Settlement (the facsimile number was included in the Class Notice);

4) Obtained a unique email address for receiving Opt-Outs and other communications about the Settlement (the email address was included in the Class Notice);

5) Obtained a unique website address and set up a website for the Settlement (the website included the Notice and Settlement Agreement for viewing, downloading and/or printing and additional information about the Settlement, and the website address was included in the Class Notice);

6) Used text provided by the parties to prepare a Class Notice which was approved by the parties (a copy of the final Class Notice is Attached as Exhibit A to Lisa Pavlik's Declaration, Exhibit 1 hereto);

7) Processed and updated the mailing addresses contained in the Class List utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service;

8) On November 22, 2021, Class Notices were mailed to 514 Class Members contained in the Class List via First Class mail (the Class Notice advised Class Members that they could submit an Opt-Out, objection and/or dispute postmarked by December 22, 2021); and,

9) Performed 25 address traces on Class Notices returned as undeliverable for the

first time as of December 22, 2021.[5]

Also as evidenced by the Declaration of Lisa Pavlik, Senior Project Manager for Administrator, Rust Consulting, Inc., (attached as Exhibit 1 hereto), the Administrator received the following responses as of the date of this filing:

1) Five (5) Class Notices remain undeliverable;

2) Zero (0) Class Notices were returned by the Post Office with forwarding addresses attached as of December 22, 2021;

3) Three (3) requests to re-mail the Class Notice were received, which were promptly re-mailed via First Class mail;

4) Zero (0) Class Members disputed the employment information provided by the Defendant;

5) Thirty-five (35) Opt-Out Statements; were received;

6) Of the Opt-Out Statements received, 32 were submitted with a postmark on or before December 22, 2021, while three (3) were submitted with a postmark after December 22, 2021; and,

7) Zero (0) objections have been received.

Pursuant to the terms of the Amended Settlement Agreement, thirty-two (32) Class Members have opted-out of the Settlement in a timely fashion, while three (3) Class Members did not opt-out timely; thus, the thirty-two (32) who opted out timely will be excluded from the Settlement. Class Counsel takes the position that the three (3) untimely opt-outs should still be included in the Class.[6] After final approval of the

---

[5] Of the 25 traces performed, 20 more current addresses were obtained and Class Notices were promptly re-mailed to those Class Members via First Class mail.  Of the 25 traces performed, Rust did not obtain updated addresses for five (5) undeliverable Class Notices.  Of the 20 Class Notices mailed to a more current address identified from trace, zero (0) Class Notices were returned to Rust as undeliverable a second time.
[6] ¶ 42 of the Amended Settlement Agreement provides that, "*It will be conclusively presumed that a Notice Packet sent in compliance with the procedures specified herein will constitute due and sufficient notice to Class Members and will satisfy the requirement of due process.*" The Declaration of Lisa Pavlik (Exhibit 1

Settlement or after the final approval hearing, the completion of settlement administration, and within seven (7) days after the Court's final approval order becomes a final un-appealable order, and upon further order of the Court, the Settlement Administrator will mail the first Individual Settlement Payments to Class Members who have not opted-out, with the second and final payments being mailed twelve (12) months thereafter.

Individual Settlement Payments were calculated based upon a review of AMC's time and payroll records to establish the full amount of unpaid overtime that otherwise would be owed to Class Members assuming Named Plaintiffs' class claims were true. A list of all Individual Settlement Payments is attached to the Amended Settlement Agreement as Exhibit A-1.  The Net Settlement Fund will be divided into two funds:  (1) The Illinois Fund shall be $1,813,685.35 and the Michigan and New Mexico Fund shall be $908,148.82 ($865,562.79 for New Mexico and $42,586.03 for Michigan). These amounts shall be divided and allocated to the Settlement Class Members on a pro-rata basis based upon the amount of claimed overtime hours worked by the Settlement Class Member during the Settlement Period.

For Illinois, each Class Member will receive a sum equal to 90% of the total damages due to each Illinois Class Member, which is comprised of the actual overtime wages due to each Class Member plus liquidated damages provided for by the appropriate

hereto) establishes that the procedures for notification of the Settlement were followed as to all Class Members, therefore it is established that they were followed as to the three Class Members who attempted to opt-out after the deadline to do so. F.R.C.P. 23(g)(4) provides that Class Counsel have a duty to "fairly and adequately represent the interests of the class," and Class Counsel interprets that duty to  mean that their foremost ethical goal is to protect the integrity of the Class as a whole and seek final approval of the Settlement that is fair, reasonable and adequate. Exhibit A to Exhibit 1 hereto, the Notice Packet, contained information regarding the date, time, and location of the Final Fairness Hearing in this matter. The aggregate amount of the payments owed under the Amended Settlement Agreement to these three Class Members is $1,526.98.

Illinois statute. These liquidated damages were calculated by taking 2% of the unpaid overtime per month from February 19, 2016 through February 29, 2019,[7] and twice the unpaid overtime wages from February 19, 2019 through the Court's preliminary approval of the settlement.

For New Mexico, each Class Member will receive a sum equal to 36% of the unpaid overtime wage calculated for each such Class Member. Class counsel believes this to be an excellent result for the New Mexico Class Members, particularly considering that AMC was granted Summary Judgment by this Court on those claims, and considering the risks of further litigation and appeals relating to those claims.

For Michigan, each Class Member will receive a sum equal to 25% of the unpaid overtime wage calculated for each such Class Member. Class counsel believes this to be an excellent result for the Michigan Class Members, particularly considering that AMC was granted Summary Judgment by this Court on those claims, and that Michigan law gained clarity since the filing of this action on such claims.

In addition, each Named Plaintiff will receive a Service Payment of Seven Thousand Five Hundred Dollars ($7,500). The contemplated payments above are not affected in any way by the Attorney's Fees and Costs requested herein. In other words, those Attorneys' fees and costs are in addition to the payments to the Settlement Class set forth above. Pursuant to the Agreement, Class Counsel do hereby below petition the Court for $1,227,900 in attorneys' fees which equates to 30% of the Gross Settlement Fund, and for $45,765.83 in expended costs and expenses. Class Counsel have attached hereto as Exhibit 2 their Declarations in support of final approval of the attorney's fees and costs.

---

[7] The Illinois statute was changed on February 19, 2019, to provide for liquidated damages of twice the amount of overtime owed.

### Proposed Schedule following Final Approval:

The Plaintiffs request that, along with granting final approval of the Amended Settlement Agreement, the Court adopt the schedule set forth below and more fully in the Amended Settlement Agreement, for the parties to effectuate the various steps in the settlement approval process under the Amended Settlement Agreement:

| Event | Deadline |
|---|---|
| Defendant shall provide one-half of the Gross Settlement Fund to the Administrator. | Within 7 calendar days after the Effective Date of the Settlement (defined as the calendar date after the date on which any appeal rights associated with the Final Approval Order has expired). |
| The Administrator shall disburse one-half of the Gross Settlement Fund. | Within 7 calendar days after receiving the Gross Settlement Fund. |
| Defendant shall provide the second half of the Gross Settlement Fund to the Administrator. | Within 12 months after the Effective Date of this Settlement. |
| The Administrator shall disburse the second half of the Gross Settlement Fund. | Within 7 calendar days after receiving the second half of the Gross Settlement Fund. |

Plaintiffs submit that the Settlement satisfies all the criteria for final settlement approval under federal and state law in that it falls well within the range of possible approval, and is fair, reasonable, and adequate. Class Counsel believes that resolution of the Class Claims is in the best interest of the members of the Class, in light of all known facts and circumstances, including the significant risks and delays of continued litigation that are presented by the defenses and potential pre-trial and appellate issues AMC may assert. A resolution of the claims at this stage – rather than following motion practice and briefing, expert discovery, motions for de-certification, pretrial proceedings, which would include a battle over representative proof and potential trial, and the costs attendant upon and likely to be incurred through such activities – most certainly greatly inures to the benefit of the members of the Class. In addition, the Named Plaintiffs approve of and

consent to the Settlement. Thus, Plaintiffs request that this Court grant this Unopposed Motion for Final Approval of the Class Action Settlement.

## IV.  ARGUMENT & AUTHORITIES

By this Motion, Plaintiffs seek final certification of the Class and final approval of the Amended Settlement Agreement. "The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910), citing *Hennessy v. Bacon*, 137 U.S. 78 (1890). "The authority to approve a settlement of a class is in the sound discretion of the trial court." *Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 546 (D. Colo. September 15, 1989), citing *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). As discussed more fully below, the Amended Settlement Agreement is fair, adequate and reasonable and well within the range of possible outcomes and should be preliminarily approved.

### A.  Final Approval of the Settlement is Appropriate.

#### 1.  The Standard for Final Approval.

A court considers the following four factors in reviewing a proposed class action settlement: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir.2002), and *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

New amendments to Rule 23 became effective on December 1, 2018. These amendments gave four new factors a court must find to render an agreement as fair, reasonable, and adequate: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and, (D) the proposal treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The advisory committee noted these new factors were not meant to displace any circuit's unique factors, but rather to focus courts on the core concerns in deciding whether to approve a proposed settlement. *See Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020) (citing Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment). The Tenth Circuit's additional factors largely overlap, with only the fourth factor not being subsumed into the new Rule 23. *See Id.* Accordingly, a court considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement, but still addresses the Tenth Circuit's factors. *Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita*, 2021 WL 1387110, at *3 (D. Colo. April 13, 2021).

Additionally, courts have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where "a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. March 22, 2006), citing *Wal-Mart Stores v.*

*Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005). As set forth below, elements of Rule 23 were previously determined to be met in the Court's analysis of class certification and preliminary approval of the Settlement, and they remain so with respect to the proposed Amended Settlement. In addition, the Court should find that the *Rutter & Wilbanks* factors, as well as those in the new amendments to Rule 23 are all satisfied, and that settlement under Rule 23 is warranted here.

## 2.   The Prerequisites of Rule 23(a) Remain Satisfied.

The Class should receive final certification. To maintain a lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a).

 Here, AMC has conceded, and this Court has previously found, that there were 634 members of the class (numerosity), which were all subjected to the same overtime "sleep time" policy (commonality and typicality).  AMC has also agreed, and this Court has previously found that, of those 634 employees, there were 519 persons employed by AMC as flight paramedics or flight nurses in [Michigan] [New Mexico] [Illinois] from February 19, 2016 to December 29, 2020, who are/were part of the certified class and who worked overtime during the Class Period and were not properly compensated for such overtime. AMC concedes, and the Court has previously found, that the Named Plaintiffs and their counsel can fairly and adequately protect the interests of the class.

### 3.  The Prerequisites of Rule 23(b)(3) Remain Satisfied.

Under Rule 23(b)(3) a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

All 519 members of the ultimate class certified were subjected to the same "sleep time" deduction from overtime compensation.  Thus, the common questions of law (i.e. whether AMC was allowed to deduct "sleep time" from its' overtime calculation) and fact (all members were subjected to same policy) predominate, and the Class should be certified.

### 4.  The proposed settlement was fairly and honestly negotiated.

The proposed Amended Settlement was not the product of collusive dealings, but, was the result of years of vigorous litigation and subsequent negotiation by experienced and qualified counsel. Plaintiffs firmly contend that the Amended Settlement was reached as the result of good-faith, arms-length dealings (and there is no evidence or argument to the contrary). In addition, the Amended Settlement was, in part, ultimately aided by the assistance of an experienced mediator[8] well-versed in the nuances of wage and hour class actions, and settlement efforts ultimately benefited from the direct input of the Court

---

[8] Even though the formal mediation in this matter did not produce a settlement at the time, Class Counsel believes that the mediation was ultimately a factor which aided in the eventual settlement now proposed.

during its last pretrial telephonic conference involving all counsel of record. Thus, this factor weighs in favor of approving the Amended Settlement.

### 5. Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.

In its Order on Cross-Motions for Summary Judgment (Doc. #113), the Court effectively dismissed the claims of two of the three states involved in this action. Thereafter, Plaintiffs filed a Motion to Reconsider, asking the Court to re-visit its analysis as to New Mexico (the largest of the three states in terms of damages). During settlement negotiations which continued following entry of the Court's Order, counsel for both sides expressed opinions regarding the possibility that their respective clients might eventually appeal from that Order. Thus, while the claims on only one state were still set for trial when settlement was reached, and although the damages for that state were largely agreed to[9], serious questions of law did still exist as of the date on which the proposed settlement was finally agreed to, thereby placing the ultimate outcome of the entire litigation in doubt.

The Parties filed numerous papers with the Court setting forth their respective legal positions regarding the Order on Cross-Motions for Summary Judgment (Doc. #113). During settlement negotiations, counsel argued to each other numerous points as to the strengths and weaknesses of each party's position on those claims. The forthright nature of the back-and-forth between the sides focused the Parties on the legal and factual issues presented by the claims. This Amended Settlement will resolve the legal risks associated with those claims, which the Plaintiffs fully appreciate.

---

[9] With one major exception as to the calculation of statutory interest on any damage award, and concerns expressed by the Court and defense counsel that the Illinois statute in question was vague at best, and possibly unconstitutional at worst.

Class Counsel and the Plaintiffs believe that the settlement amount (Gross Settlement Fund and Net Settlement Fund) are not only reasonable, but an excellent result given the risks of litigating the claims and the potential recovery. Specifically, while the recovery would possibly be greater if the class were to fully succeed on their claims at trial and survive an appeal, there is the possibility of zero recovery should AMC ultimately prevail. Not surprisingly, AMC contends that there has been no violation of the applicable state laws and therefore there is no basis for damages. Nonetheless, as a result of Plaintiffs' extensive efforts, the parties were able to agree to the terms of the Settlement.

> **6. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.**

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.*, at 1015. When the risks of further litigation could result in no recovery for Class Members, or a significantly lower recovery than the current settlement, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement can far outweigh the uncertainty of any future relief, justifying approval of a Settlement Agreement. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 130-31 (D. Colo. February 8, 2016).

First, with respect to the Plaintiffs' range of possible recovery, Plaintiffs believe

that the value of the Amended Settlement is fair and reasonable given the various challenges facing Plaintiffs. Specifically, based upon the multiple risks continued litigation would entail, and the risk that Plaintiffs and the putative class could recover nothing, Plaintiffs believe the proposed Amended Settlement is fair, adequate, and reasonable. As held in *Davis v. J.P. Morgan Chase & Co.*, "it is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial." 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011). Thus, this factor weighs in favor of approving the Amended Settlement.

Second, with respect to the extent that settlement will enable the parties to avoid the burdens and expense of trial and appeals, the prosecution of this case has been and would continue to be lengthy and expensive. If this Amended Settlement is not approved, the Parties face an extended and costly battle with additional expensive motion practice, motions for decertification, trial preparation and trial that would likely be costly, in addition to lengthy appeals. Further, if the Parties do not settle the Plaintiffs' claims, it would likely take several years (in addition to the over two years the case has been pending) and additional legal fees before reaching final resolution of those claims, including exhaustion of all appeals. Thus, this factor weighs in favor of approving the Amended Settlement.

Third, with respect to the risks faced by the Parties, litigation—and especially class actions—inherently involve risks. The risks to both sides are apparent here. While Plaintiffs believe they would prevail on their appeals of the Summary Judgments granted by the Court for New Mexico and Michigan, Defendant would certainly mount a strong and costly challenge based upon its arguments set forth in its various papers to this

Court, and further believe that it would prevail in reversing this Court's grant of Summary Judgment to the Illinois class on appeal. Obviously, it is hard to predict how the 10th Circuit Court of Appeals would handle the appeals that would certainly be filed absent settlement, and each side bears great risks going forward absent settlement. Accordingly, this factor further weighs in favor of approving the Amended Settlement. Again, as held in *Davis v. J.P. Morgan Chase & Co.*, *supra*, "Since the Court cannot foresee with absolute certainty the outcome of the case, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.*, at 177. (Internal citations omitted).

### 7. It is the judgment of the parties that the settlement is fair and reasonable.

The Parties agree that the Amended Settlement Agreement is fair and reasonable, and believe the Court should accord substantial weight to the conclusion of counsel for all parties that the proposed settlement is fair and reasonable for all putative Class Members. Counsel for both Plaintiffs and Defendant have litigated numerous state law wage and hour class actions in multiple jurisdictions, and have negotiated settlements on both an individual and a class-wide basis. They are, therefore, experienced in addressing the issues that arise in complex litigation and settlements. Thus, the judgment of the parties and their counsel as to fairness and reasonableness should be relied upon by the Court.

### 8. Rule 23(g) is Satisfied. The class representatives and class counsel have adequately represented the class.

Rule 23(g) requires a court that certifies a class to appoint class counsel, taking into consideration four factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) the counsel's experience in handling class

actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). "These standards are generally met with members of the bar in good standing typically deemed qualified and competent to represent a class absent evidence to the contrary." *Newberg on Class Actions* § 3:72 (5th ed.) This Court has already approved Class Counsel in this matter (*See* Order granting class certification, Doc. #92), and nothing has changed since that ruling.

In the matter *sub judice,* Plaintiffs' counsel has expended an inordinate amount of time and resources litigating this matter and analyzing the tens of thousands of pages produced by Defendant in discovery.  Counsel and their hired experts completed a calculation for all Class Members, which required the analysis of each employee's daily time records and bi-weekly pay stubs, followed by additional application of each state's respective law relative to statutory damages and/or interest.  Upon final analysis, the Plaintiffs' damage calculation of overtime wage allegedly owed matched almost exactly with Defendant's calculation.  In total, Plaintiffs were represented by five attorneys from three different law firms, all of whom employed support staff, an economics expert witness, and a third-party vendor to aid in formatting the data.  In other words, adequate resources were committed to representing the class.

> **9. The relief provided to the Class is adequate, and the Proposed Amended Settlement treats Class Members equitably relative to each other.**

For reasons stated hereinabove, Plaintiffs believe that the relief provided under the Proposed Amended Settlement Agreement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and, (iv) the content of the Amended Settlement Agreement itself. The Plaintiffs also believe that the proposal treats all Class Members equitably relative to each other, primarily by virtue of the relative allocation of net settlement funds among the three states involved.

As set out in more detail hereinabove, the Proposed Amended Settlement includes Class Members from all three states originally involved in this action, even though the claims of Class Members of two of the three states were effectively dismissed by virtue of the Court's Order on Cross-Motions for Summary Judgment (Doc. #113). In light of the possibility that <u>both</u> Plaintiffs and Defendant could ultimately appeal that ruling, even after a trial in the matter, the parties chose to include Class Members <u>from all three states</u> in the Proposed Amended Settlement. The Plaintiffs assert, and Defendant agrees by virtue of its non-opposition to this Motion, that the Class Members of each state are treated equitably under the Proposed Amended Settlement in two significant respects: (1) within each state class, each member will receive the same percentage of their actual, respective damages as every other member of that state class; and, (2) the Illinois Class Members will each receive Ninety Percent (90%) of their respective damages, while the New Mexico Class Members will each receive Thirty Six Percent (36%) of their respective damages and the Michigan Class Members will each receive Twenty-Five Percent (25%) of their respective damages, with that allocation method reflecting the respective differences between possibilities of ultimate recovery for each class should the matter not be settled but be litigated through trial and the appellate process.

### 10. The service payments to Named Plaintiffs are reasonable.

"[N]amed plaintiffs...are eligible for reasonable incentive payments" as part of a class action settlement. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117,

131 (D. Colo. February 8, 2016), quoting *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir.2003). "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed – their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII- A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). "When considering the appropriateness of an award for class representation, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.,* 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

The Proposed Amended Settlement provides for a Service Payment of Seven Thousand Five Hundred Dollars ($7,500) for each class representative. The representative plaintiffs spent considerable time and effort working on the case with counsel. The litigation will yield individual payouts to Class Members of 90% of damages for the Illinois Class, and 36% and 25% for the New Mexico Class and Michigan Class (respectively) on claims which were dismissed. The representative plaintiffs' commitment to the case, the personal sacrifices of time while pursuing this litigation, and the outcome achieved warrants a significant award in this case. *Rothe v. Battelle Memorial Institute*, 2021 WL 2588873 (D. Colo. June 24, 2021), quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). Therefore, the Court should conclude that the enhanced

payments are reasonable compensation for the Named Plaintiffs.

**B. The Proposed Form of Notice Satisfied Due Process.**

Pursuant to Fed. R. Civ. P. 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Additionally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Due Process Clause, moreover, gives unnamed class members the right to notice of the settlement of a class action. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "The hallmark of the notice inquiry … is reasonableness." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 696 (10th Cir. 2006). "In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement." *Rothe v. Battelle Memorial Institute*, 2021 WL 2588873 (D. Colo. June 24, 2021), citing *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005).

Here, as demonstrated by the Declaration of Lisa Pavlik, Senior Project Manager for Administrator, Rust Consulting, Inc., (attached as Exhibit 1 hereto), the Notice provided clear and accurate information as to the nature and principal terms of the Settlement. This included an explanation of the method for allocating the settlement funds to Class Members (within and among each of the three states), the process for opting-out of the Settlement Class, how to submit objections, and the consequences of taking or foregoing the various options available to members of the Settlement Class. The Notice also provided details on the date, time and place of the final approval hearing. *See*

*Manual on Complex Litigation, Fourth Ed.* (2004) at § 21.312. Pursuant to Fed. R. Civ. P. 23(h). The Notice also set forth the maximum amount of attorneys' fees, expenses and costs which may be sought by Class Counsel.

Exhibit 1 reflects that, in response to the  514 Class Notices mailed to Class Members: five (5) Class Notices remain undeliverable; zero (0) Class Notices were returned by the Post Office with forwarding addresses attached as of December 22, 2021; three (3) requests to re-mail the Class Notice were received, which were promptly re-mailed via First Class mail; zero (0) Class Members disputed the employment information provided by the Defendant; thirty-five (35) Opt-Out Statements; were received; of the Opt-Out Statements received, 32 were submitted with a postmark on or before December 22, 2021, while three (3) were submitted with a postmark after December 22, 2021; and, zero (0) objections have been received. Pursuant to the terms of the Amended Settlement Agreement, thirty-two (32) Class Members have opted-out of the Settlement in a timely fashion, while three (3) Class Members did not opt-out timely; thus, the thirty-two (32) who opted out timely will be excluded from the Settlement.

**C. The Attorneys' Fees and Costs Should Receive Final Approval.**

In class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund. *See Gottlieb v. Bany*, 43 F.3d 474, 482 (10th Cir. 1994). Courts generally award attorneys' fees in common fund cases "based on a percentage of the common fund obtained for the benefit the class," thereby "proportionately spreading payment of attorney fees among the class members." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, *2-3 (D. Colo. Dec. 22, 2010). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar

method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel was retained on a contingent fee basis, as in this case." *Id.* (quotations omitted); *see also Anderson v. Merit*, 2009 WL 3378526 at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created."). *See also Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because plaintiffs' fee request is for a percentage of the common fund, the Court should evaluate the attorney's fees award using the percentage of the fund approach. *See Rothe v. Battelle Memorial* Institute, 2021 WL 2588873 (D. Colo. June 24, 2021) citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards'." *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)). In determining the reasonableness of a percentage award, courts must apply the factors[10] set forth in *Johnson*

---

[10] Which are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974). *Rothe v. Battelle Memorial Institute*, 2021 WL 2588873 (D. Colo. June 24, 2021).

In the matter *sub judice,* Plaintiffs' counsel seek attorneys' fees in the amount of $1,227,900, which represents a fee equal to 30% of the common fund, along with reimbursement of costs and expenses in the amount of $45,765.83. The state laws at issue here all provide that the employer is liable for attorneys' fees and costs when the employer fails to provide the overtime compensation required by those state laws.

Significantly, the Proposed Amended Settlement will allow 90% recovery of damages for the Illinois Class Members, as well as 36% and 25% of the unpaid overtime wage for Class Members of the two states which were dismissed from the lawsuit, while avoiding litigation risks that could threaten recovery. This is an excellent result for the Class as a whole, and weighs very heavily in favor of approving the amount of fees requested. *See Rothe v. Battellee Memorial Institute*, s*upra, and In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) (noting that "the amount of the recovery, and end result achieved are of primary importance" when considering what constitutes a reasonable attorney fee).

As part of the litigation, counsel for Plaintiffs investigated the case prior to and after filing the Complaint, including interviewing numerous employees and reviewing voluminous documents and compiling databases of employment and payroll data. During discovery, Plaintiffs interviewed multiple employees, further reviewed documents, and responded to extensive discovery requests. Class Counsel has spent a significant amount of time preparing plaintiffs' affidavits, and documents for class certification; interviewed numerous Class Members; working with their expert witness and third-party data vendor; and, spent considerable time preparing for and conducting mediation. Over more than

two years of litigation, Plaintiffs were represented by five attorneys from three different law firms, all of whom employed support staff, an economics expert witness, and a third-party vendor to aid in formatting the evidence required to prove the claims involved. Class Counsel firms have each submitted Declarations reflecting summaries of their time expended in this matter, attached hereto as Exhibit 2. The Class Counsel Declarations reflect a total of 2,640.25 hours, with hourly rates charged by Class Counsel ranging between $375 and $400 per hour (and between $100 and $125 for staff members), for a combined lodestar of $933,535.00. The Class Counsel attorney's fees sought in this matter of $1,227,900 reflect a 1.32 multiplier on counsel's lodestar amount, which is well below the lodestar multipliers that Colorado federal courts have consistently approved in other class action cases.

The wage and hour issues in this litigation are governed by highly technical state statutes and regulations, including the differing laws of Illinois, New Mexico, and Michigan. Class counsel was well equipped to address the unique challenges and anticipated defenses posed to Plaintiffs' ability to recover in this case. Ultimately, Class Counsel successfully negotiated a settlement that provides meaningful recovery for the Plaintiff class.  "Attorneys attempting to handle a large class are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case." *Whittington v. Taco Bell of America, Inc.*, 2013 WL 6022972 at *6 (D. Colo. Nov. 13, 2013). Class Counsel collectively spent significant hours on this case on a contingent fee basis and were, thereby, required to forego other work to undertake this case.

 "The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class." *Anderson v. Merit Energy Co.*,

2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009); *see also Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20-50% range are "presumptively reasonable"). The requested and agreed to fee in the Proposed Amended Settlement amounts to 30% of the common fund. This is well within the percentage range approved in similar cases. *See e.g., Whittington*, 2013 WL 6022972, *6.

Class Counsel undertook the representation on a contingency basis. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates ... yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Rothe v. Battelle Memorial Institute*, 2021 WL 2588873 (D. Colo. Jun3 24, 2021) citing *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation ... and transfer a significant portion of the risk of loss to the attorneys taking a case." *Rothe* quoting *In re Abrams,* 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.* Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g., Farley v. Family Dollar Stores, Inc.*, WL 5488897, at *4 (D. Colo. Oct. 30, 2014). In this case, Class Counsel would not have recovered any of their fees and out- of-pocket costs had they not obtained a settlement or prevailed at trial. This factor thus weighs in favor of the requested fees because Class Counsel assumed significant risk of nonpayment when they agreed to represent the Named Plaintiffs on a contingency fee basis.

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). *See also Dalal v. Alliant Techsystems, Inc.*, 927 F. Supp. 1374, 1381 (D. Colo. 1996) ("The degree of success a plaintiff enjoys is a critical factor in determining the amount of fees to be awarded." (Internal citations and quotations omitted)). Here, the $4,093,000.00 settlement represents a significant recovery on behalf of the settlement classes in light of the numerous risks. Further, the net settlement fund (total settlement fund minus attorneys' fees and costs, service awards, and settlement administration costs) represents 90% of the claimed unpaid wages and statutory liquidated damages for the Illinois Class plus 36% and 25% of the unclaimed wages for claims in the two states which were dismissed from the action. Given the risks involved, the Class Counsel believes that the relief provided by the settlement represents an excellent result for the settlement class.

Based on the unopposed motion for preliminary approval of the Settlement, and the unopposed nature of this motion for final approval of the Amended Settlement, Class Counsel now petition the Court to give final approval of the attorney's fees of $1,227,900, together with costs of $45,765.83, to be paid as provided in the Amended Settlement Agreement.

## V.    CONCLUSION

For the foregoing reasons, the Plaintiffs request that this Court enter the proposed Final Approval Order, which, *inter alia*: (1) asserts and maintains jurisdiction over the implementation and administration of the Amended Settlement Agreement; (2) Grants the Plaintiffs' unopposed motion for final certification of class action and final approval of the Amended Class Action Settlement Agreement and Release which includes a Gross

Settlement Fund of $4,093,000.00, and $1,227,900 in attorneys' fees, together with costs of $45,765.83; (3) Finds that the Amended Settlement Agreement is within the range of reasonableness, and is adjudicated to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and the CAFA; (4) Approves the Individual Settlement Payments listed on the Payout Sheet attached as Exhibit A-1 to the Amended Settlement Agreement, with the exception that the payment amounts allocated to those thirty-two (32) Class Members who timely opted-out shall revert back to Defendant; (5) Finds that the Settlement Notice, attached as Exhibit A-2 to the Amended Settlement Agreement satisfied Due Process; and, (6) Approves the schedule for effectuating the Amended Settlement Agreement.

Respectfully Submitted,

COWAN LAW OFFICE, PLC

/s/ J. Robert Cowan
J. Robert Cowan, Esq.
2401 Regency Road; Suite 300
Lexington, Kentucky 40503
Telephone: 859-523-8883
Facsimile: 859-523-8885
Email: kylaw@cowanlawky.com


Christopher D. Miller, Esq.
Charles W. Arnold, Esq.
121 Prosperous Place, Suite 6B
Lexington, Kentucky 40509
Telephone: 859-381-9999
Facsimile: 859-389-6666
Email: cmiller@arnoldmillerlaw.com
Email: carnold@arnoldmillerlaw.com

AND

Christopher M. Moody

Repps D. Stanford
MOODY & STANFORD, P.C.
4169 Montgomery Blvd. NE
Albuquerque, NM 87109
Telephone: 505-944-0033
Fax: 505-944-0034
Email: moody@nmlaborlaw.com
Email: stanford@nmlaborlaw.com

**CO-COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed and served upon all counsel of record through the Court's Case Management and Electronic Case Filing (CM/ECF) system on January 21, 2022.

/s/ J. Robert Cowan
Co-Counsel for Plaintiffs